Joseph F. Gagliardi, J.
In a CPLR article 78 proceeding petitioner requests dismissal of two ont-of-State detainer warrants. Certain issues raised herein are important, novel, require analysis of the uniform Agreement on Detainers (sometimes referred to as the “interstate compact”) and rules of comity within the context of a prisoner’s right to a speedy trial on charges unrelated to his imprisonment.
FACTUAL BACKGROUND
On January 12, 1972 and March 22, 1972, while petitioner was incarcerated at the Manhattan House of Detention for Men, warrants of detainer were lodged against him "by the States of Rhode Island and Massachusetts, respectively.[1] On February 3,1972 petitioner communicated by letter with the Sixth District Court of Rhode Island requesting information about the warrant and that the letter be treated as a petition pro se for a speedy trial. A similar request for the above relief was sent to the Peabody District Court in Massachusetts on March 23, 1972. *415 These letters were directed to the courts from which bench warrants had issued, and were sent certified mail return receipt requested. At the hearing hereon petitioner exhibited copies of the return receipts indicating that the aforesaid courts received his letter-motions. These facts are not disputed by the Attorney-General.
On May 15, 1972 petitioner was returned to the Ossining Correctional Facility where he is presently incarcerated. Petitioner’s prison file reveals that the detainer warrants were filed with prison authorities on July 7, 1972 and that the prison officials notified the prosecuting authorities involved that petitioner would be conditionally, released on January 29, 1973. These facts are uncontroverted.
Petitioner contends that he has complied with the statutory prerequisites under the uniform Agreement on Detainers (CPL 580.20) and is entitled to have the detainer warrants dismissed upon the ground that the out-of-State authorities failed to bring him to trial within the statutory time period of 180 days after the request for a speedy trial was made. The Attorney-General opposes the application on separate grounds for each detainer, to wit: (1) insofar as the Massachusetts warrant is concerned, petitioner failed to comply with the statute since he did not give notice to the warden as therein required; and (2) insofar as the ¡Rhode Island warrant is concerned, the uniform Agreement on Detainers is inapplicable because that State is not a signatory thereto.
Nature and Effects of Detainer Warrants.
At this point it might be useful to briefly examine the nature and character of detainer warrants. During the summer of 1970 the Center for Criminal Justice at the Harvard Law School conducted a research project pertaining to the detainer system. As an outgrowth of the study an article appeared in the Criminal Law Bulletin (Dauber, “ Reforming the Detainer System ”, 7 Crim. L. Bull. 669 [Oct., 1971]) wherein the author’s introduction cogently summarizes the purpose of the detainer as follows (p. 670): “A man is in prison. He is also wanted by officials from another criminal agency to be a witness, to stand trial on another charge, for violating parole, for escaping from prison, for any one of a number of more or less compelling reasons * * * The device created to deal with this situation is the detainer — a copy of an arrest warrant, or indictment, or commitment order, or, less formally, simply a letter or note sent to the prison by a prosecutor, court, police chief, parole board, or any other official empowered to take people *416 into custody, asking to be informed by the prison officials when the inmate in question is to be released.”
The study found that the most common type of detainer was the one lodged in order to hold an inmate to answer outstanding charges (Dauber, op cit., p. 676). The average length of time that it took to resolve a detainer, by trial or dismissal, was found to be approximately 10 months {id., pp. 685-686). The author of the cited article concluded that, due to the routine and informal manner by which detainers were filed, prisoners suffered manifold adverse consequences and that the criminal justice system itself was not immune to some ill effects {id., pp. 691-698). The effects of detainers upon prisoners were succinctly stated in a subsequent article which reviewed the detainer system throughout the United States (Wexler & Hershey, “ Criminal Detainers in a Nutshell ”, 7 Grim. L. Bull. 753 [Nov., 1971]) as follows (ibid.): “ a prison inmate with a detainer filed against him because of outstanding charges in another jurisdiction may suffer several disabilities, ranging from mandatory maximum-security classification to exclusion from vocational rehabilitation programs and even to possible ineligibility for parole.”
The adverse effects upon the criminal justice system usually are expressed in monetary terms, which include wasted expenditures on rehabilitation and increased costs caused by the delay and litigation involving detainers (Dauber, op. cit., pp. 697-698; Wexler & Hershey, op. cit., p. 757-758). The nature and effects of the detainer warrants as set forth by the commentators are significant at least insofar as a broad general overview of the entire system is concerned and especially with regard to the matter- sub judice. While petitioner herein does not claim that the detainer warrants lodged against him have caused prison officials to treat him any differently from other inmates, judicial notice of the diverse considerations employed by the custodial authorities may be taken and it shall be presumed that petitioner suffers from some of the afore-mentioned restrictions merely because a detainer against him exists (cf. Smith v. Hooey, 393 U. S. 374, 378).[2] As one commentator put it: “ These unfortunate collateral effects make it particularly important to ascer *417 tain when detainers are groundless, futile or inactive ” (note, 48 Col. L. Bev. 1190, 1193 [1948]; see Tentative Draft, ABA Project on Minimum Standards for Criminal Justice — Standards Delating to Speedy Trial 32-40 [Tentative Draft, 1967]).
THE MASSACHUSETTS DETAINER WARRANT
The court shall first consider the Massachusetts warrant of detainer and the provisions of the uniform agreement on detainers. The interstate compact was adopted by this State in 1957 (formerly Code Crim. Pro.,/§ 669-b) and is presently in force in 31 State jurisdictions, the District of Columbia, and the Federal jurisdiction. The statute is primarily designed to standardize interstate rendition procedures while preserving the rights of prisoners to speedy trials (N. Y. Legis. Annual, 1957, p. 42; Denzer, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 580.20, p. 135). The right to a speedy trial is mandated by the Sixth Amendment to the Federal Constitution, and all States, whether signatories to the interstate compact or not, are constitutionally required to use good faith efforts in attempting to secure speedy trials for persons incarcerated in prison in other jurisdictions (Smith v. Hooey, 393 U. S. 374, supra; see Dickey v. Florida, 398 U. S. 30). Nonetheless, while the purpose of the interstate compact is to insure that out-of-State criminal charges are disposed of within a reasonable period of time upon proper application by the prisoner (People v. Esposito, 37 Misc 2d 386; People v. Segura, 12 Misc 2d 279), its terms place a more stringent burden upon the prosecutor than does the Federal Constitution {People v. White, 33 A D 2d 217, 221). Consequently, the prisoner must comply with all of the statutory provisions before judicial relief may be had {ibid.).
The uniform Agreement on Detainers provides that, once the prisoner has given the requisite notice, ‘ ‘ he shall be brought to trial within one hundred eighty days ” unless the court for good cause grants a continuance (CPL 580.20, art. m, § [a]).[3] If *418 trial is not held within the aforesaid time period the indictment may be dismissed with prejudice (CPL 580.20, art. Ill, § [d]). Parenthetically, it should be noted that this court do,es not have jurisdiction to dismiss an out-of-State indictment. Petitioner and his counsel have not requested such extraordinary relief but merely seek dismissal of the detainer warrants. There is a paucity of decisions under the interstate compact from which guidelines may be sought (cf. 21 Am.- Jur. 2d, Criminal Law, § 250, p. 26 [1972 supp.]; Wexler & Hershey, of. cit., p. 755). Some commentators have urged that the court in the State of confinement issue an order prohibiting prosecution of an out-of-State indictment where the prisoner has satisfied and the prosecutor neglected speedy trial concepts (Wexler & Hershey, op. cit., p. 763). As indicated earlier, the point is not raised by petitioner nor could it properly be considered in the absence of necessary parties (cf. Peofle ex rel. Henderson v. Casscles, 66 Misc 2d 492). However, the question raised, which is apparently novel in this State, is whether the <?ourt in the State of detention may expunge a detainer lodged by a signatory State to the interstate compact.
Section (c) of article V of the compact authorizes the court in the prosecuting State to dismiss the indictment upon expiration of the 180-day period “ and any detainer based thereon shall cease to be of any force or effect ”. The quoted phrase is the only reference in the interstate compact regarding vacatur of detainers. Nevertheless, recent Federal decisions in habeas corpus proceedings have held that the court in the State of confinement possesses the inherent power to expunge detainers lodged with prison authorities (United States ex rel. Jennings v. State of Pennsylvania, 429 F. 2d 522 [3d Cir.]; Kane v State of Virginia, 419 F. 2d 1369 [4th Cir.]; United States ex rel. Watson v. Norton, 335 F. Supp. 1324 [Conn.]; Caruth v. Mackell, 7 C. L. R 2414. [Dist. Ct., E. D. N. Y.] ; Weiss v. Blackwell, 310 F. Supp. 360 [1ST. D. G-a.]; Lawrence v. Blackwell, 298 F. Supp. 708, 714 [N. D. Ga.]; see Word v. State of North Carolina, 406 F. 2d 352, 357 [n. 6]; cf. Bedwell v. Harris, 451 F. 2d 122 [10th Cir.]; Camfhell v. Commonwealth of Virginia, 453 F. 2d 1230 [10th Cir.]). The interstate compact itself provides that it shall be liberally construed so as to effectuate its purposes ” (CPL 580.20, art. IX, § 1). Failure of the prosecuting State to co-operate under the terms of the agreement necessarily,leads to the conclusion that a remedy must exist in the courts of the State of confinement (People v. Bryarly, 23 Ill. 2d 313). A CPLR *419 article 78 proceeding, such as at bar, is properly brought to review matters affecting a prisoner’s term of confinement where, as here, the respondent is the person charged with the duties imposed under the interstate compact regarding detainers (cf. People ex rel. Henderson v. Casscles, 66 Mise 2d 492, supra). Consequently, I am of the opinion that, implicit in the statutory scheme, is the power of the court in the State of detention to dismiss detainer warrants lodged with prison authorities by sister States where it appears that the underlying accusatory instrument itself is subject to dismissal in the courts of the State purportedly desirous of prosecution, for its failure to afford the prisoner a speedy trial (cf. Dauber, op. cit., p. 714). To hold otherwise would defeat the statutory intent that all untried charges be disposed of within the statutory time period and, further, subject a prisoner about to be released from his term of confinement to unwarranted imprisonment in another State where he will be assigned new and additional counsel for the purpose of bringing a proceeding to dismiss the accusatory instrument (cf. Barker v. Wingo, 407 U. S. 514 Nelson v. George, 399 U. S. 224). Nonetheless, vacatur of the detainer warrant lodged with custodial officials does not preclude the prosecuting State from seeking extradition in this State for the underlying criminal act pursuant to appropriate statutory authority (CPL 570.32, 570.34, 570.36; cf, People ex rel. Arnold v. Hoy, 32 Misc 2d 824 [Hopkins, J.]).
Returning to cur initial inquiry herein, the prisoner is required to give written notice ‘ to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction * * * of the place of his imprisonment and his request fqr a final disposition to be made of the indictment, information or complaint ” (CPL 580.20; art. Ill, § [a]). The prisoner must also give written notice to the official “ having custody of [him] ” and such official must notify the prosecuting official and court of the prisoner’s term of commitment, parole eligibility, etc. (CPL 580.20, jtI IH, §§ [b], [d]).
Tbo Attorney-General contends that petitioner did not give ar_y notice to the official “ having custody of him”. In his ^nswer it is averred that the Ossining Correctional Facility utilizes a form which the prisoner must fill out before the statutory notice is sent. It is further stated that the chief clerk of the prison could not locate such form in the petitioner’s prison file. Petitioner, in turn, offers documentary evidence that notice *420 was given and received by the chief clerk on July 18, 1972.[4] The hearsay statements contained in the Attorney-General’s answer are insufficient to controvert petitioner’s sworn allegations, which are supported by extrinsic proof. Consequently, the court concludes that petitioner gave statutory notice to the official ‘ ‘ having custody of him ’ ’.
The failure of the Warden to forward the appropriate information to the Massachusetts officials may not be held against petitioner (People v. Esposito, 37 Misc 2d 386, supra). Nevertheless, the interstate compact is not self-executing and petitioner must comply with all of the statutory provisions promptly (People v. White, 33 A D 2d 217, supra). Here it is patent that petitioner did not mail the statutory notice “ to the prosecuting officer ” (GPL 580.20, art. Ill, § [a]). Indeed, had such notice been sent, the prosecuting officer could have requested temporary custody and petitioner’s presence in the Massachusetts courts and there obtained a continuance (ibid.; see State of New Jersey v. Lippolis, 55 N. J. 354, revg. 107 N. J. Super. 137). The Commonwealth’s rights in matters of this nature are no less than those of the petitioner. The prosecuting officer is entitled to notice and received none. It may be argued that if the chief clerk of the Ossining Correctional Facility had performed his duty, the defect would have been cured. The argument is appealing but not persuasive. No such notice was ever given and the petitioner’s failure to comply with the statutory mandate cannot be excused. This is not to say that petitioner’s demand to the appropriate court in Massachusetts may not be deemed a demand for a speedy trial notwithstanding the provisions of the interstate compact; but that is a matter within the jurisdiction of that State; and other factors must be considered, such as whether the Massachusetts court informed the prosecuting authorities about petitioner’s letter-motion. Accordingly, under all the circumstances, the motion to dismiss the Massachusetts detainer is denied, without prejudice to a renewal upon proof of complete statutory compliance (of. Wexler & Hershey, op. cit., p. 760 [n. 41]).
*421 THE RHODE ISLAND DETAINER WARRANT
Insofar as the Rhode Island detainer warrant is concerned it is clear that the uniform Agreement on Detainers is inapplicable, since that State is not a signatory thereto. However, the argument by the Attorney-General that detainer warrants filed by nonsignatories are not dismissible because of that fact is specious. Such argument, if adopted, might tend to constitute illegal State action and, further, do violence to the reciprocal benefits delineated in the interstate compact. By a parity of reasoning the Rhode Island warrant seemingly is of no force and effect except as this State is inclined as a matter of comity to honor it (cf. Nelson v. George, 399 U. S. 224, supra; People ex rel. Rainone v. Murphy, 1 N Y 2d 367, 371-372, overruled as to other grounds; People ex rel. Petite v. Follette, 24 N Y 2d 60). A detainer filed by a nonmember of the interstate compact is nothing more than a request that the State of confinement notify the prosecuting State of the date of the inmate’s release so as to permit the latter to put its extradition machinery in process. The out-of-State detainer does not even rise to the level of a penal judgment and this State is free to consider what effect, if any, it shall be given (Nelson v. George, supra). While the prosecuting authorities are not obligated to lodge a detainer, the filing and notification thereof to the prisoner leads to important legal consequences whenever a speedy trial claim arises (People v. Brandfon, 4 AD 2d 679).[5] That the police authorities in this State may honor the Rhode Island detainer is of little moment insofar as petitioner’s classification in prison is concerned.
Rhode Island is a signatory to the Uniform Criminal Extradition Act (CPL art. 570) and can request extradition of petitioner while he is imprisoned in this State (CPL 570.12). Failure by a State to request extradition may constitute a denial of *422 due process, despite the fact that one of the States involved is not a signatory to the uniform Agreement on Detainers (cf. People v. Wallace, 26 N Y 2d 371; People v. Winfrey, 20 N Y 2d 138; People v. Monaghan, 34 A D 2d 815). Once again it is to be observed that this court does not íiave the power to dismiss an out-of-State accusatory instrument, but it can act to prevent the State prison authorities from classifying petitioner as a detainee (cf. Smith v. Hooey, 393 U. S. 374, 378-379 [n. 8], supra) and obviate potential pretrial detention (cf. note, 79 Yale L. J. 941 [1970]). In the absence of compelling circumstances favoring retention of the detainer warrant, this court holds that, upon expiration of the time period specified in the interstate compact, the detainer lodged with prison authorities must be dismissed although filed by a nonmember of the agreement (Kane v. State of Virginia, 419 F. 2d 1369, 1374 [n. 10], supra; Commonwealth v. Ditzler, 217 Pa. Super. Ot. 105, vacated 443 Pa. 73; Wexler & Hershey, op. cit., p. 757 [n. 27]), The fact that the Rhode Island prosecuting authorities did not receive notice from the petitioner, while a factor to be considered (cf. Barker v. Wingo, 407 U. S. 514, supra), is outweighed by their knowledge of petitioner’s whereabouts since January 12, 1972 and the relatively minor nature of the alleged crime (n. 1; People v. Winfrey, supra, p. 144)% Solely for the purposes of this motion it is obvious that the subject detainer has been neglected and is inactive.[6] Failure to promptly request extradition adversely affects the prisoner’s present condition and his ability to defend himself in the future. “ Only a present remedy can lift [the] dual oppressions” (Kane v. State of Virginia, 419 F. 2d 1369, 1372 [4th Cir.], supra). Accordingly, the Rhode Island detainer is dismissed and shall be expunged from the petitioner’s prison records.
It must be emphasized that nothing said herein operates as an estoppel upon the Rhode Island and New York police authorities from using the extradition process. Futhermore, if such *423 procedure is utilized, the court expresses no view either on the merits of petitioner’s speedy trial claim, nor whether extradition may be contested in this State upon the ground that he was denied the right to a speedy trial (cf. Nelson v. George, 399 U. S. 224, supra; People ex rel. Arnold v. Hoy, 32 Misc 2d 824, supra; note, 74 Tale L. J. 78 [1964]; Wexler & Hershey, op. cit., pp. 763-776). Additionally, it is to be noted that petitioner’s request herein, insofar as the Ehode Island warrant is concerned, is not a waiver of extradition within the meaning of section (e) of article III of the interstate compact (Wexler & Hershey, op. cit., p. 761 [n. 46]).
The Attorney-General shall submit a judgment on notice within 20 days after the date of this decision and shall mail copies of the decision and order to the appropriate prosecuting authorities in the States of Massachusetts and Ehode Island within 20 days thereafter.

. The warrants of detainer are contained in the petitioner’s prison file. The Massachusetts warrant is dated July 28, 1971 and was signed by Judge John E. Murpht. No other information is stated on the warrant. Petitioner, however, has ascertained that the underlying charge is for his default in answering a complaint for breaking and entering with the intent to commit a felony. The Rhode Island warrant is dated July 22,1971 and was signed by Judge Del Ness and charges petitioner with leaving the scene of an accident on July 21, 1971 involving personal injuries.

. Significantly, the regulations of the New York State Correctional Services pertaining to the criteria for parole selection do not mention what effect, if any, a detainer has in determining whether an inmate will be paroled (7 NYCRR 1.10). Petitioner herein is eligible for conditional release in January, 1973 and, as a practical matter it would seem that, if in fact such release occurs, petitioner would be detained by the Westchester County Sheriff’s office upon due notification by the out-of-State police authorities.

. Significantly, the 180-day or six-month period is the guidepost in this State insofar as persons are indicted here for felonies (CPL 30.30, subd. 1, par. [a], added by L. 1972, eh. 184; see 22 NYCRR 29.2 [repealed by L. 1972, ch. 184] ; People v. Ganci, 27 N Y 2d 418; McCoy, Speedier Justice in New York, 11 The Judge’s Journal 93 [Oct., 1972]; note, 57 Cornell L. Rev. 794 [1972]). The six-month period is subject to extension where the defendant is detained in another jurisdiction, provided that the District Attorney is aware, of such detention and “ has made reasonable efforts to obtain the presence of the defendant for trial (CPL 30.30, subd. 4, par. [e]; cf. 22 NYCRR 29.3 [c] [2]).

. Petitioner attached to his papers a letter addressed to the chief clerk of the Ossining Correctional Facility, dated July 18, 1972. Petitioner also annexed an interdepartmental communication, but the original in the prison file indicates that this exhibit merely relates to the fact that the prison authorities received notice about the detainers from an outside source. The letter of July 18, 1972 is not in the prison file which was examined by the court; but, absent affirmative proof that the letter was not sent, the court is inclined to find in petitioner’s favor on the point in issue. In any event, as the opinion indicates infra, the issue is academic.

. New York is not a “ demand ” 'State, that is, the prisoner is not required to request a speedy trial in order to present his constitutional claims relative thereto (People v. Prosser, 309 NT. Y. 353, 360; ef. 22 NYCRR 29.5; see Second Circuit Rules Regarding Prompt Disposition of Crminal Cases, 2nd Cir. R. 8 [eff. July 5, 1971]; note 57 Cornell L. Rev. 794, 799-802, 814-816 [1972]; note, 71 Col. L. Rev. 1059,1067, 1072 [1971]; note, 57 Col. L. Rev. 846, 852-855 [1957]). However, the prisoner’s failure to take some affirmative action prior to trial when he knows of the outstanding charges may he deemed an implied waiver of his constitutional rights (Barker v. Wingo, 407 Ü. S. 514; People ex rel. LeMon v. Maneusi, 31 NT Y 2d 679; People v. Prosser, supra). Indeed, case law has been codified to the extent that our statute requires the defendant to make a motion prior to trial to preserve his speedy trial claim (CPL 30.30, subd. 1).

. Ordinarily, this court would require petitioner to meet the statutory prerequisites delineated in the interátate compact before entertaining an ápplication to dismiss the detainer. However, as indicated in the opinion, the absence of notice to the Rhode Island prosecuting authorities is virtually iminaterial under the circumstances at har. Failure to apply the terms of the interstate compact to a detainer filed by a nonsignatory State would be incongruous since the Legislature by enactment thereof and passage of the new statute pertaining to speedy trials (GPL 30.30) has set' forth guidelines applicable to all claims relative to timely disposition of untried charges (see Legislative Memorandum, McKinney’s Session Law News of New York A-119 [May 25, 1972]; Denser Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, GPL 30.30, pp. 14-16 [1972 Supp.]; People v. Henderson, 72 Mise 2d 12).