STATE EX REL. GARNER, Petitioner, v. GRAY, Warden, Respondent.

*No. State 34. Decided June 18, 1973.*
(Also reported in 208 N. W. 2d 161.)

324

For the petitioner the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

WILKIE, J.    Two issues are presented in this second consideration of the Garner petition:

1. Does this court have jurisdiction to consider petitioner's claim that he was denied his right to a speedy trial and, if so, has he been denied such right?

2. In light of the stipulation of facts in the instant case, have the officials of the states of Wisconsin and Illinois complied with the provisions of the Interstate Agreement on Detainers?

*Speedy trial claim.*

Petitioner contends the actions of both Illinois and Wisconsin officials have resulted in his being denied a speedy trial guaranteed by the Agreement on Detainers [5] and the United States and state constitutions.[6] According to petitioner, the Illinois authorities have not made a good-faith effort to procure his presence despite his repeated requests for trial. The Wisconsin authorities, according to petitioner, did not inform him of his right to demand a speedy trial and, indeed, crossed out such portion of the form entitled "Notification of Detainer and Acknowledgment of Speedy Trial" which he signed. Petitioner argues the Wisconsin prison officials must make efforts to insure that prisoners are advised of their right to demand a speedy trial and take steps to enforce such right as, for example, dismissing the detainers when the act is not complied with by demanding states. Petitioner asks this court to make permanent its temporary injunction restraining respondent from returning to Illinois to stand trial.

However, petitioner cannot raise this claim in this court. The Agreement on Detainers provides that a person shall be brought to trial within 180 days after he has delivered to the prosecutor and court of the

---

[5] Sec. 976.05, art. III (a), Stats.

[6] U. S. Const. arts. VI and XIV; Wis. Const. art. I, sec. 7.

appropriate jurisdiction a written notice of the place of his imprisonment and a request for final disposition of the indictment, information or complaint.[7] Art. III (d) of the Detainer Act provides:

". . . If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, *and the court shall enter an order dismissing the same with prejudice."* (Emphasis added.) [8]

While the Agreement on Detainers itself does not specify the appropriate court which has jurisdiction to dismiss the indictment, information or complaint, several courts have interpreted art. III (d) as precluding courts of the asylum state from determining whether the 180-day rule or other constitutional rights have been violated. The Supreme Court of Minnesota, in *State ex rel. Chamberlain v. Martinco,* concluded as follows:

"We fail to find in the provisions of the Uniform Mandatory Disposition of Detainers Act (Minn. St. 629.292) or the Interstate Agreement on Detainers (Minn. St. 629.294) language which would persuade us to change or modify our decision in LaRose [*State ex rel. LaRose v. Granquist* (1966), 273 Minn. 231, 140 N. W. 2d 700]. In that case we said that where a fugitive is held in Minnesota for removal to a state in which a criminal charge is pending against him, this court will not pass upon questions relating to constitutional rights allegedly denied in the demanding state and will leave to the courts of such state the determination of the merits of such objections. Nor do we find any language in these statutory provisions which would remotely suggest that this state would have authority to dismiss an indictment returned in a foreign jurisdiction. Giving petitioner the full benefit of the statutory provisions noted, we conclude that the views expressed by this court in LaRose

---

[7] Sec. 976.05, art. III (a), Stats.
[8] Sec. 976.05, art. III (d), Stats.

are still controlling and that the issues presented by petitioner are for the courts of Kansas to decide." [9]

Also directly on point is *State v. West,* wherein the Superior Court of New Jersey, confronted with challenges under the Detainer Act's 180-day rule, concluded as follows:

"We think it is clear that the concluding words of *Art.* III (d), 'the court shall enter an order dismissing the same with prejudice,' refer to the court of the state in which the indictments are pending. . . . This conclusion is fully supported by the language found in *Art.* V (c), as well as *Art.* III (a) and *Art.* IV (a). Consequently, we conclude that the County Court properly declined to entertain defendant's motion, which in effect called upon it to dismiss or nullify indictments charging the commission of crime in a foreign state. The argument here made may be made in the Pennsylvania courts, and relief here sought may be requested therein." [10]

These decisions are in accord with the vast majority of cases which have arisen under the extradition statutes. [11]

---

[9] (1970), 288 Minn. 231, 233, 234, 179 N. W. 2d 286.

[10] (1963), 79 N. J. Super. 379, 387, 191 Atl. 2d 758.

[11] The principle was succinctly stated recently by the Supreme Court of Appeals of West Virginia in *State ex rel. Mitchell v. Allen* (Ct. App. W. Va. 1971), 185 S. E. 2d 355, 357, 358, certiorari denied 406 U. S. 946:

"It is the contention of the appellant that the Circuit Court of Marshall County erred in considering the question of whether the petitioners' constitutional rights to a speedy trial in Virginia were violated at the habeas corpus hearings, because the question is not a proper subject in habeas corpus proceedings challenging the validity of extradition warrants. This contention is well taken, because it has been repeatedly held that the courts in an asylum state cannot determine constitutional questions with regard to crimes charged against fugitives in a demanding state. It is for the courts of the demanding state to determine such question in the first instance. . . .

"The type of constitutional rights involved is immaterial. It has been specifically held that where the petitioners in a habeas corpus proceeding in an asylum state where the petitioners are being held by virtue of extradition warrants from a demanding

Petitioner, in support of his contention, cites a number of federal cases which, he urges, "clearly indicate that this court has the power to review the actions of the prosecutors and police in our sister state to determine whether their inaction violated petitioners' right to speedy trials." [12] These cases, however, are not in point as they solely concern themselves with the habeas corpus jurisdiction of a federal district court under 28 USC 2241 (a) [13] when confronted with a speedy trial claim under 28 USC 2254 which permits enforcement of the right to a speedy trial on state charges to be brought in the federal courts. [14] While the United States Supreme Court laid to rest this term the confusion which had arisen among the circuits in *Braden v. Thirtieth Judicial Circuit Court of Kentucky*, such decision cannot be construed as authorizing the state courts of an asylum state to rule on whether the demanding state has violated

state contend that they should be released from custody because their constitutional rights to a speedy trial have been violated in the demanding state, it is not proper for the courts in the asylum state to consider the question. . . ."

See also: *State ex rel. Kojis v. Barczak* (1953), 264 Wis. 136, 141, 58 N. W. 2d 420; *People ex. rel. Arnold v. Hoy* (1961), 32 Misc. 2d 824, 223 N. Y. Supp. 2d 759, 761; *Mitchum v. Stynchcombe* (1971), 227 Ga. 226, 179 S. E. 2d 919, 920; *Ex parte Grooms* (Texas Crim. App. 1971), 468 S. W. 2d 817.

[12] *Peyton v. Rowe* (1968), 391 U. S. 54, 88 Sup. Ct. 1549, 20 L. Ed. 2d 426; *Nelson v. George* (1970), 399 U. S. 224, 90 Sup. Ct. 1963, 26 L. Ed. 2d 578.

[13] 28 USC 2241 (a) provides: "**Power to grant writ** (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions.* The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had." (Emphasis added.)

[14] 28 USC 2254 (Supp. III, 1968). *See also,* Tuttle, *Catch 2254: Federal Jurisdiction and Interstate Detainers,* 32 U. Pitt. L. Rev. (1971), 489.

a prisoner's constitutional rights.[15] There was no indication in the *Braden* decision that the United States high court intended to undermine the principles it outlined in *Sweeney v. Woodall,* wherein a prisoner in Ohio contested his pending transfer to the authorities of the State of Alabama on the grounds that the treatment he had formerly received in the latter state was cruel and unusual punishment.[16] According to the court,

". . . The scheme of interstate rendition, as set forth in both the Constitution and the statutes which Congress has enacted to implement the Constitution, contemplates the prompt return of a fugitive from justice as soon as the state from which he fled demands him; these provisions do not contemplate an appearance by Alabama in respondent's asylum to defend against the claimed abuses of its prison system. Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of his treatment by Alabama in the courts of that State. Respondent should be required to initiate his suit in the courts of Alabama, where all parties may be heard, where all pertinent testimony will be readily available and where suitable relief, if any is necessary, may be fashioned." [17]

We conclude that the merits of petitioner's speedy trial claim must be litigated not in the asylum state, Wisconsin; but in the courts of the demanding state, Illinois. This being so, this court cannot address the merits of petitioner's contentions.

### Compliance with the Uniform Detainer Act.

In his original petition, Garner alleged several instances of noncompliance with the Uniform Detainer Act. A fact-finding hearing was ordered to determine

[15] (1973), 410 U. S. 484, 93 Sup. Ct. 1123, 35 L. Ed. 2d 443.
[16] (1952), 344 U. S. 86, 73 Sup. Ct. 139, 97 L. Ed. 114.
[17] *Id.* at pages 89, 90.

whether such allegations were true.[18]  In lieu of a fact-finding hearing the parties have entered into a stipulation of facts pertinent to the allegations of noncompliance and have filed such stipulation with this court.  In the stipulation petitioner has abandoned several of his original charges of error.  The stipulation reveals only one instance of noncompliance of any moment.

Petitioner originally asserted the detainer lodged against him was filed by the Chicago police department rather than the correct party, the Cook county state's attorney (or his assistants).  The parties have stipulated that this is true—the Chicago police department rather than the Cook county state's attorney lodged the detainer against the petitioner.  The Uniform Detainer Act's relevant section does not clearly designate who is entitled or required to lodge the detainer against the prisoner of another state.  Art. IV (a) of the act merely provides:

> "The *appropriate officer* of the jurisdiction . . . shall be entitled to have a prisoner against whom *he* has lodged a detainer . . . made available in accordance with article V (a) hereof upon presentation of a written request for temporary custody . . . ."  (Emphasis supplied.) [19]

Other sections of the act make it clear that the prosecuting officer of the county wherein outstanding complaints, warrants or indictments exist is the "appropriate officer" within the meaning of art. IV (a).[20]  This is also verified by the Committee of State Officials on Suggested State Legislation, wherein it is stated: "In Article IV the prosecutor initiates the proceeding." [21]  Thus, despite the lack of clarity in art. IV (a), the "appropriate offi-

---

[18] *Supra,* footnote 3, at page 590.

[19] Sec. 976.05, art. IV (a), Stats.

[20] *See* sec. 976.05, art. III (a) and (d), Stats.

[21] *Suggested State Legislation 1958–1962,* The Council of State Government, Program for 1958, 81, 82.

cer" referred to would be, in this situation, the Cook county, Illinois, state's attorney.

The Chicago police department in the instant case was not the appropriate authority to file a detainer against the petitioner. This failure to follow the dictates of the Detainer Act merits discussion. Several authors have noted the adverse effects upon a prisoner resulting from a detainer being lodged against him.[22] Thus, for example, he may be held under maximum security, he may be denied transfer to a minimum security area or prison, he may be denied the privilege of becoming a trustee or a job which involves a degree of trust. Further, and of great importance to the prisoner, he may be denied parole because of a detainer filed against him.[23] Because of the seriousness of these conceivable ramifications of a detainer being lodged against a prisoner, there must be strict adherence to the provisions of the Uniform Detainer Act. Thus, where the act suggests the proper party to lodge a detainer is the local prosecutor, compliance with such provision should be required. This is true for other provisions of the Detainer Act also.

This particular procedural error did not prejudice any of petitioner's fundamental rights and is, therefore, not fatal to the efforts by the Illinois authorities to obtain the return of petitioner.

*By the Court.*—Petition denied.

---

[22] Note, *Detainers and the Correctional Process,* 1966 Wash. U. L. Q. 417; *see also:* Walther, *Detainer Warrants and the Speedy Trial Provision,* 46 Marq. L. Rev. (1963), 423.

[23] 1966 Wash. U. L. Q., *supra,* footnote 22, at page 420.