**Michael Moran HICKEY, a/k/a Michael John Moran, Plaintiff-Appellant,**

v.

**STATE of Iowa, Defendant-Appellee.**

**No. 83–206.**

Court of Appeals of Iowa.

March 20, 1984.

Charles L. Harrington, Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen., and Lona Hansen, Asst. Atty. Gen., for defendant-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

The plaintiff, an inmate of the Men's Reformatory in Anamosa, Iowa, appeals from the trial court's denial of habeas corpus and refusal to dismiss a request by the State of Florida that the plaintiff be temporarily placed in its custody for trial on pending Florida criminal charges pursuant to the Interstate Agreement on Detainers Compact. The plaintiff asserts that under Article III(a) of Iowa Code section 821.1 (Interstate Agreement on Detainers Compact), Florida has lost its right to bring him from another state for trial by failing to do so within 180 days of his request for such trial. The State of Iowa asserts in response that the plaintiff's requests to Florida for a speedy disposition of the charges did not meet the procedural requirements of the Interstate Agreement on Detainers Compact (IADC) and, therefore, did not trigger the provision of the statute requiring trial within 180 days. We affirm.

On September 24, 1982, a "Request for Temporary Custody" was filed in Jones County District Court by the Broward County [Florida] State Attorney's Office. The request was directed to the Iowa Men's Reformatory and proposed to bring the defendant to Florida for trial on robbery and theft charges pursuant to Article IV(c) of the IADC. The plaintiff in this action, Michael Moran Hickey a/k/a Michael John Moran, resisted Florida's application for custody on the basis that he had previously requested a transfer of custody for disposition of the Florida criminal charges under Article III(a) of the IADC and Florida failed to bring him to trial on the pending charges within 180 days of his request. We briefly set out the relevant facts in this case in order to clarify the conflicting claims.

■ The facts are essentially undisputed. Plaintiff was arrested in Cedar County, Iowa, on December 18, 1981 on a theft charge. Florida authorities sent a teletype to the Cedar County Sheriff's Office on December 24, 1981, informing the sheriff that Broward County held an active warrant for Michael Moran Hickey on grand theft and robbery charges. The Cedar County Sheriff informed the plaintiff that Florida had "placed a hold on him" and the plaintiff indicated that he wanted to waive extradition. On February 9, 1982, the Broward County Sheriff sent a letter to the Cedar County Sheriff requesting that an enclosed capias [1] for the defendant's arrest and other documents be filed as a detainer. This detainer was not, however, served upon the plaintiff.

The plaintiff, while incarcerated in Cedar County awaiting trial on the Iowa charge, wrote a letter on March 1, 1982 to the County Attorney's Office in Broward County, Florida, advising them of his place of incarceration and stating that if the Florida charges were still in effect, he would waive extradition to Florida so that he could be tried as quickly as possible. This letter was notarized and mailed by an employee of the Cedar County Sheriff's Office, but it was not given to the Cedar County Sheriff nor accompanied by a certificate as contemplated in Article III(a) of the Agreement on Detainers Compact.

---

1. A "capias" is the general name for several species of writs, the common characteristic of which is that they require the officer to take the body of the defendant into custody. *Black's Law Dictionary* 188 (rev. 5th ed. 1979). Under criminal procedure, "capias" is a mesne or intermediate process having sole purpose of securing presence of defendant. *Moore v. State,* 578 S.W.2d 78, 81 (Tenn.1979).

Plaintiff was sentenced in Iowa on a theft charge and committed to the Iowa Men's Reformatory in Anamosa on March 22, 1982. The Cedar County Sheriff also transmitted the Florida detainer to the Iowa officials at the Reformatory.[2] On April 5, 1982, an administrative officer for the Reformatory sent the Sheriff of Broward County, Florida, a letter notifying him that the detainer on plaintiff had been received, that notice would be given to the Florida authorities prior to the plaintiff's release, and that the plaintiff's tentative discharge date was November 4, 1984. The administrative officer, Kay Shaw, testified that she sent a copy of the letter to the plaintiff through prison mails, but plaintiff testified he did not receive this letter. The administrative officer did not inform plaintiff of the Florida detainer on the plaintiff as contemplated by Article III(c) of the IADC because of her mistaken belief that Florida was not a party state to the Interstate Agreement on Detainers Compact.

The plaintiff again wrote a letter to the Broward County, Florida, officials requesting a speedy disposition of the Florida charges on May 18, 1982. The plaintiff specifically mentioned the IADC and the 180-day time limit of Article III. This letter was notarized and accompanied by a certificate of mailing executed by the Iowa Reformatory Mailroom Officer. There was nothing to indicate, however, that the letter had been transmitted to other Iowa Reformatory officials and there was no certificate as contemplated by the IADC accompanying the request.

The plaintiff was informed of the Florida detainer on June 18, 1982, during an interview by a parole officer. Plaintiff met with Kay Shaw on June 21, 1982, at which time he was provided with a copy of the Florida detainer and a notice of his rights under the IADC. Although the administrative officer offered to assist in filling out the forms to implement the speedy trial provisions of the IADC, the plaintiff refus-

ed because of his belief that he had already done so. Plaintiff also wrote a letter to the Broward County, Florida, officials withdrawing his prior waiver of extradition and informing them that he would seek to have the Florida detainer quashed because of Florida's alleged failure to comply with the speedy trial provisions of the IADC.

The Broward County [Florida] Attorney's Office initiated a "Request for Temporary Custody" of the plaintiff under Article IV(a) of the IADC on September 10, 1982. That request was received by the Iowa officials at the Iowa Men's Reformatory on September 16, 1982. It was proposed in the request that the Florida officials would take custody on or after October 22, 1982. It is pursuant to Florida's Article IV request that temporary custody is being sought. Plaintiff does not contend on this appeal that those provisions were improperly invoked.

The plaintiff resisted the request for temporary custody by filing a petition for a writ of habeas corpus and/or motion to dismiss. Plaintiff requested the district court to dismiss the Florida charges for want of timely prosecution and for failure to comply with the speedy trial requirements of the IADC. The plaintiff also requested that the Florida detainer be removed from plaintiff's Iowa files and "returned to Florida as null and void." The trial court denied plaintiff's request for relief finding that plaintiff had not complied with the requirements of the IADC to activate the speedy trial provisions of Article III(a). Plaintiff appeals only the trial court's refusal to quash the Florida detainer and remove it from his Iowa records.

Iowa is the "sending state" in this action and Florida is the "receiving state." Iowa Code § 821.1 ART. II(b) and (c) (1983). Florida has invoked the IADC under Article IV(a) by initiating the transfer. Plaintiff is attempting to challenge the transfer by seeking a writ of habeas corpus. He is asserting that Florida's request is barred

---

**2.** It also appears from the court file that the Broward County [Florida] Sheriff's Office sent another capias to be filed as a detainer to the

Iowa Men's Reformatory at Anamosa on June 17, 1982. It is unclear when this was received in Iowa.

by its alleged failure to comply with the speedy trial provisions of Article III(a) which he allegedly invoked by his actions while incarcerated in the Cedar County jail and subsequently at Anamosa.

■ I. In habeas corpus matters (except in child custody cases) our review is not de novo. *Thurman v. State,* 223 N.W.2d 248, 249 (Iowa 1974). We are bound by the trial court's findings for which there is substantial evidentiary support; we consider only assigned errors and we normally review only those matters properly raised and preserved below. *Id.; Hughes v. Waters,* 204 N.W.2d 599, 600 (Iowa 1973).

■ II. The parties did not address the issue of whether or not Iowa has jurisdiction as the "sending state" under the IADC to entertain an action to determine whether the "receiving state" has complied with the provisions of the IADC. Normally an issue may not be raised for the first time on appeal. *Zeman v. Canton State Bank,* 211 N.W.2d 346, 350 (Iowa 1973). Jurisdiction, however, is a matter that can be raised at any stage of the proceedings and will be considered by the court on its own motions when appropriate. *In re Matter of Estate of Dull,* 303 N.W.2d 402, 406 (Iowa 1981); *Recker v. Gustafson,* 271 N.W.2d 738, 739 (Iowa 1978). We elect to do so in this case.

The United States Supreme Court held in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), that prisoners transferred pursuant to Article IV of the IADC are not required to give up any preexisting rights they had under state or federal law to challenge their transfer to the "receiving state." *Id.* at 450, 101 S.Ct. at 712, 66 L.Ed. at 655. A prisoner transferred against his will should be entitled to whatever safeguards of the extradition process he might otherwise have enjoyed, including those procedural protections of the Uniform Criminal Extradition Act [Iowa Code chapter 820 (1983)]. *Id.* at 448, 101 S.Ct. at 711–12, 66 L.Ed. at 654. Under the Supreme Court's interpretation, prisoners are given the right to a judicial hearing in which they can bring a limited challenge to the "receiving state's" custody request. *Id.* at 449, 101 S.Ct. at 712, 66 L.Ed.2d at 654–55.

■ Traditionally under Iowa law, a prisoner was entitled to bring a limited challenge by a petition for a writ of habeas corpus to the extradition request of a foreign state. *Thurman v. State,* 223 N.W.2d at 249; *Hughes v. Waters,* 204 N.W.2d at 600. We were concerned with only two questions: "(1) Is petitioner charged with the commission of a crime in the demanding state? (2) Is petitioner a fugitive, i.e., was he present within the demanding state when the crime was committed?" *Thurman v. State,* 223 N.W.2d at 249. *Cf. Michigan v. Doran,* 439 U.S. 282, 289, 99 S.Ct. 530, 538, 58 L.Ed.2d 521, 527 (1978) (inquiry in a habeas corpus challenge to extradition proceeding). Thus, it is clear under the Supreme Court's interpretation of the IADC in *Cuyler* that the plaintiff is entitled to at least this traditional limited challenge to his transfer of custody.

However, the plaintiff also seeks to challenge the transfer of custody to Florida based upon Florida's alleged failure to comply with the speedy trial provisions of Article III(a) of the IADC. Specifically plaintiff contends that his March 1, 1982, waiver of extradition and request to be tried on the Florida charges as quickly as possible invoked the 180-day speedy trial provision of Article III(a). Their proposed date to take custody, October 22, 1982, was after this 180-day period. We must determine whether the plaintiff may pursue this challenge in Iowa courts or whether he may only present this challenge in the Florida courts.

It has been generally held that under the IADC, courts in the state in which the prisoner is incarcerated lack authority to dismiss out-of-state charges even though a prisoner claims that the "receiving state's" prosecuting authorities have violated his right to a speedy trial under Article III(a). *State ex rel. Garner v. Gray,* 59 Wis.2d 323, 208 N.W.2d 161 (1973); *Baker v.*

*Schubin*, 72 Misc.2d 413, 339 N.Y.S.2d 360 (N.Y.Sup.Ct.1972); *State ex rel. Chamberlain v. Martinco*, 288 Minn. 231, 179 N.W.2d 286 (1970); *State v. West*, 79 N.J. Super. 379, 191 A.2d 758 (Super.Ct.App. Div.1963). It has also been held that where a detainer is based upon a *conviction* in another jurisdiction, and a prisoner seeks to challenge that detainer because of an alleged violation of the IADC, the challenge must be raised in the demanding state. *Mokone v. Fenton*, 710 F.2d 998, 1002–03 (3rd Cir.1983); *Stewart v. Sheriff of Leavenworth County*, 5 Kan.App.2d 593, 595, 620 P.2d 352, 354 (1981). Some courts have also indicated that when serving as the asylum state they will not pass on alleged violation of the detainer act or alleged violation of constitutional rights by demanding states, but will leave such determination to the courts of the demanding state. *State ex rel. Garner v. Gray*, 59 Wis.2d 323, 208 N.W.2d 161; *State ex rel. Mitchell v. Allen*, 155 W.Va. 530, 185 S.E.2d 355 (1971), *cert. denied* 406 U.S. 946, 92 S.Ct. 2048, 32 L.Ed.2d 333 (1972); *State ex rel. Chamberlain v. Martinco*, 288 Minn. 231, 179 N.W.2d 286. These latter cases, however, all involve extradition statutes and not actions initiated under the IADC. *See State ex rel. Bursaw v. Omodt*, 338 N.W.2d 585 (Minn.1983). The Wisconsin court in *Garner*, although refusing to dismiss the detainer on speedy trial grounds, determined that the petitioner in that case was not prejudiced by the "receiving state's" failure to strictly comply with the IADC. Also, the Wisconsin Court of Appeals discharged an Illinois detainer lodged against a Wisconsin prisoner because of a failure to comply with the provisions of the IADC in *State v. Sykes*, 91 Wis.2d 436, 439, 283 N.W.2d 446, 448 (Wis.Ct.App.1979).

■ Moreover, other courts have held that while a court in the "sending state" may not dismiss the indictment of the "receiving state," the courts of the "sending state" have the authority to dismiss detainer warrants lodged with prison authorities by sister states where it appears that the underlying accusatory instrument itself is subject to dismissal in the courts of the "receiving state" for failure to comply with the speedy trial provisions of the IADC. *Baker v. Schubin*, 72 Misc.2d at 419, 339 N.Y.S.2d at 369. *See also Buchanan v. Michigan Department of Corrections*, 50 Mich.App. 1, 212 N.W.2d 745 (1973); *Rainey v. Michigan Department of Corrections*, 41 Mich.App. 313, 199 N.W.2d 829 (1972). We hold that in addition to the traditional limited review of extradition cases preserved by the Supreme Court in *Cuyler* under the IADC, the court of the "sending state" may also dismiss a detainer lodged against a prisoner incarcerated within its borders where it appears that the underlying indictment is subject to dismissal in the courts of the "receiving state" for failure to comply with the provisions of the IADC. We are careful to note that this holding does not prevent a "receiving state" whose detainer has been dismissed from using the extradition process. *See Baker v. Schubin*, 72 Misc.2d at 422, 339 N.Y.S.2d at 369. We, therefore, review plaintiff's claims that the detainer should be quashed because of Florida's failure to comply with the speedy trial provisions of Article III(a) of the IADC.

■ III. The trial court found in this case that the requisites for transfer of custody under the traditional inquiry normally used in extradition cases had been shown. Because we find that its findings were supported by substantial evidence, its findings are binding upon us. The trial court was correct in denying plaintiff's requested relief under the traditional extradition inquiry.

■ We also do not believe the plaintiff invoked the 180-day speedy trial provision of Article III(a). Article III(a) of Iowa Code section 821.1 reads in pertinent part:

Whenever a person has *entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment* there is pending in any other party state any untried indictment, information or

complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. [emphasis added]

. This provision does not apply to pretrial detainees. *United States v. Harris,* 566 F.2d 610, 613 (8th Cir.1977); *Commonwealth v. Heath,* 288 Pa.Super. 119, 128, 431 A.2d 317, 321 (1981). The plaintiff did not begin a sentence of imprisonment until March 22, 1982. After the plaintiff's term of imprisonment began, plaintiff sent a request for a speedy disposition of the charges to Florida on May 18, 1982 and withdrew the request on June 21, 1982. Because plaintiff had not entered a term of imprisonment on March 1, 1982, his letter requesting speedy disposition of the Florida charges did not trigger the speedy trial provisions of Article III(a).

The May 18, 1982, request also did not include a certificate of the "appropriate official having custody of the prisoner" as required by Article III(a). *State v. Bass,* 320 N.W.2d 824, 828 (Iowa 1982); *State v. Thomas,* 275 N.W.2d 211, 214 (Iowa 1979); *State v. Wood,* 241 N.W.2d 8, 12 (Iowa 1976). The plaintiff did not invoke the speedy trial provisions of Article III(a) of

the IADC by his actions. Even assuming plaintiff's letter of March 1, the reformatory administrator's "certificate" of April 5, and his term of imprisonment beginning on March 22 triggered the provisions of Article III of the IADC, the plaintiff withdrew his request for a speedy disposition of the Florida charges on June 21, 1981. The plaintiff suffered no prejudice as a result of any alleged errors on the part of the State of Florida and its agents. Under this set of facts, the plaintiff is not entitled to dismissal of the Florida detainer against him.

Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.