IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 87-194

MILTON K. BLAKEY, District Attorney,
in and for the Ninth Judicial
District, State of Colorado, on
behalf of the PEOPLE OF THE STATE
OF COLORADO,

Petitioners,

v.

DISTRICT COURT, Second Judicial
District, County of Silver Bow,
State of Montana; ARNOLD OLSEN,
judge thereof; and DALE EDWARD
ANDERSON, real party in interest,

Respondents.

FILED

Ethel Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

)
)    O P I N I O N
)        A N D
)      O R D E R
)

On January 26, 1987, the Second Judicial District Court, Silver Bow County, issued an order that the State of Colorado had not complied with the Interstate Agreement on Detainers (IAD) so that defendant Anderson's arrest was null and void and that all future Colorado detainers, based upon the same charges, were declared to be of no effect in the State of Montana. Colorado (petitioner), on May 20, 1987, filed its Petition for Writ of Mandate, directed to the respondent court to vacate said order. The petitioners responded on July 10, 1987, and both parties have filed requests, briefs, motions and responses. We remand to the District Court and order that its order of January 26, 1987 be vacated.

The following facts, gleaned from the record, are not in dispute.

On May 6, 1983, a District Judge of Rio Blanco County, Colorado, issued an arrest warrant, based upon an affidavit of probable cause, for the arrest of Dale Edward Anderson, with bail in the amount of $10,000.

1

Dale Edward Anderson was sentenced to six years at the Montana State Prison on March 13, 1984. On May 4, 1984, the Warden's office, Montana State Prison acknowledged receipt of the Colorado arrest warrant as a detainer. On July, 22, 1985, the defendant, Dale Edward Anderson, executed a request for disposition of Information or Complaints, and on July 30, 1985, the Warden of the Montana State Prison offered to deliver temporary custody of the defendant to the petitioner herein.

On August 19, 1985, petitioner herein wrote to defendant's wife, indicating that he did not intend to release the "detainer" filed against the defendant in Montana.

On February 7, 1986, the Warden of the Montana State Prison advised the petitioner herein that petitioner had acknowledged receipt of the defendant's demand for final disposition under the Interstate Agreement on Detainers, and that because the 180-day period had passed without the petitioner taking temporary custody of the defendant, the Colorado detainer was no longer of force or effect and therefore the petitioner was requested to have the appropriate court enter an order dismissing the action against defendant with prejudice.

On March 10, 1986, the Clerk of the Ninth District Court, Rio Blanco County Colorado, received from the defendant pro se a Motion to dismiss indictment/detainer lodged on or about May 6, 1983. On May 21, 1986, petitioner's deputy advised the Montana State Prison staff that no information had been filed against the defendant, although there was an active felony warrant filed, and that therefore the Interstate Agreement on Detainers did not apply.

On October 16, 1986, an Information was filed by petitioner's staff against the defendant based upon the same

2

alleged conduct as described in the affidavit of probable cause in support of the arrest warrant issued May 6, 1983. On December 23, 1986, the defendant was arrested by Montana officers by authority of a warrant issued by the Rio Blanco County, Colorado, District Court.

On January 26, 1987, a hearing was held upon the application of the defendant for Writ of Habeas Corpus before the Honorable Arnold Olson, District Judge of the Second Judicial District of the State of Montana in and for the County of Silver Bow. At the hearing the defendant was present and was represented by his attorney, John G. Winston. The State of Colorado was purportedly represented by Ross Richardson, Chief Deputy County Attorney for Silver Bow County, Montana. After presentation of testimony and oral argument, the presiding Judge entered Findings, Conclusions, and Judgment to the effect that the State of Colorado had not complied with the Interstate Agreement on Detainers so "the Detainer under which the Petitioner was arrested on the 23rd day of December 1986 is null and void."

Upon these facts, we temporarily deferred ruling on the application for Writ of Mandate until the appropriate court of the State of Colorado acted upon Anderson's motion to dismiss. Anderson's motion to dismiss was based on Article III(a) of the Interstate Agreement on Detainers, §§ 46-31-101 et seq., MCA, C.R.S. §§ 24-60-501 et seq., which requires the state issuing a detainer, the receiving or demanding state, to bring the accused to trial within 180 days after the accused requests final disposition of the matter. In this case, Anderson did all that was required of him under the Act.

On December 9, 1987, the Rio Blanco District Court, Honorable Gavin D. Litwiller, denied Anderson's motion to dismiss on grounds that "[p]revious to October 16, 1986 no Indictment, Information, or Complaint had been filed . . . "

3

The Colorado court relied on the Colorado Supreme Court case of People v. Gonzales (Colo. 1984), 679 P.2d 1085, which interpreted the Colorado Uniform Disposition on Detainer Act, C.R.S. §§ 16-14-101 et seq., which is the Colorado Intrastate counterpart to the Interstate Agreement on Detainers. In Gonzales, the Colorado Supreme Court ruled that an arrest warrant does not trigger the application of the Intrastate Agreement and the Colorado District Court in this case held that the outstanding arrest warrant did not trigger the application of the Interstate Agreement.

Respondents, through Winston and Colorado counsel inadequately responded to our order of March 23, 1988 in which we requested evidence in writing for reasons why an appeal of the Colorado decision was not commenced by January 15, 1988, as was stated by Winston in a Motion to Retain our Order filed January 6, 1988. Winston's Motion stated that respondent retained Colorado co-counsel to perfect an appeal to the Colorado Supreme Court. After a number of orders by this Court for further written assurances that an appeal was being perfected, we were advised that under Colorado law only an interlocutory appeal is available on the Colorado District Court's order and that the time period allowed for this appeal had expired.

Petitioners present the following two issues in their brief in support of the Writ of Mandate:

1. Whether the Montana District Court exceeded its jurisdiction under the extradition clause by blocking extradition based on an alleged violation of the Interstate Agreement on Detainers by the receiving state?

2. Whether the respondent court incorrectly defined a "detainer" to include a mere arrest warrant?

Initially, we note that the general rule is that asylum, sending or custody, state courts have only limited jurisdiction and limited judicial review over a transfer

4

sought by a receiving state pursuant to the IAD. Abad v. Ricketts (Colo. 1982), 645 P.2d 848, 849. Further, this limitation has generally been strictly construed to allow inquiry similar to the inquiry allowed in extradition proceedings. Michigan v. Doran (1978), 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521; Coble v. Magone (Mont. 1987), 744 P.2d 1244, 1245, 44 St.Rep. 1766, 1768; Petition of Blackburn (Mont. 1985), 701 P.2d 715, 717, 42 St.Rep. 525, 527. Review by the asylum or custody state is allowed but is limited in scope to the issues concerning technical sufficiency of the extradition documents, identification of the accused, whether the accused has been substantially charged with a crime, and whether the accused is a fugitive. Morris v. McGoff (Colo. 1986), 728 P.2d 720, 722; Sweaney v. District Court, Eighteenth Judicial District (Colo. 1986), 713 P.2d 914, 917; Dodson v. Cooper (Colo. 1985), 705 P.2d 500, 503, cert den. 474 U.S. 1084, 106 S.Ct. 857, 88 L.Ed.2d 896.

We will not intercede and determine Colorado law as we are without jurisdiction to do so. However, we note that one court has expressed the reasoning that the sending state's judicial review, especially in determining validity under the IAD rather than extradition, may be more than that expressed in Doran. The Iowa Court of Appeals decision in Hickey v. State (Iowa App. 1984), 349 N.W.2d 772, briefly addressed the question whether a "sending state" under the Interstate Act, referred to as the IADC, rather than IAD, had jurisdiction to determine whether the "receiving state" has complied with the IADC.

> The United States Supreme Court held in Cuyler v. Adams, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), that prisoners transferred pursuant to Article IV of the IADC are not required to give up any preexisting rights they had under state or federal law to challenge their transfer to the "receiving state." Id. at 450, 101 S.Ct. at 712, 66 L.Ed.2d at

5

655. A prisoner transferred against his will should be entitled to whatever safeguards of the extradition process he might otherwise have enjoyed, including those procedural protections of the Uniform Criminal Extradition Act [Iowa Code chapter 820 (1983)]. Id. at 448, 101 S.Ct. at 711-12, 66 L.Ed.2d at 654. Under the Supreme Court's interpretation, prisoners are given the right to a judicial hearing in which they can bring a limited challenge to the "receiving state's" custody request. Id. at 449, 101 S.Ct. at 712, 66 L.Ed.2d at 654-55.

The Iowa court proceeded to state that historically the prisoner was limited to the Doran factor challenges but in the specific case before it the court said it had to determine whether a pursuit of challenging the receiving state's compliance with the IADC could be made by the prisoner in the sending state. The Hickey Court stated:

It has been generally held that under the IADC, courts in the state in which the prisoner is incarcerated lack authority to dismiss out-of-state charges even though a prisoner claims that the "receiving state's" prosecuting authorities have violated his right to a speedy trial under Article III(a). State ex rel. Garner v. Gray, 59 Wis.2d 323, 208 N.W.2d 161 (1973); Baker v. Schubin, 72 Misc.2d 413, 339 N.Y.S.2d 360 (N.Y.Sup.Ct.1971); State ex rel. Chamberlain v. Martinco, 288 Minn. 231, 179 N.W.2d 286 (1970); State v. West, 79 N.J.Super. 379, 191 A.2d 758 (Super.Ct. App.Div.1963). . . Some courts have also indicated that when serving as the asylum state they will not pass on alleged violation of the detainer act or alleged violation of constitutional rights by demanding states, but will leave such determination to the courts of the demanding states. State ex rel. Garner v. Gray, 59 Wis.2d 323, 208 N.W.2d 161; State ex rel. Mitchell v. Allen, 155 W.Va. 530, 185 S.E.2d 355 (1971), cert. denied 406 U.S. 946, 92 S.Ct. 2048, 32

6

L.Ed.2d 333 (1972); State ex rel. Chamberlain v. Martinco, 288 Minn. 231, 179 N.W.2d 286. These latter cases, however, all involve extradition statutes and not actions initiated under the IADC. See, State ex rel. Bursaw v. Omodt, 338 N.W.2d 585 (Minn.1983) . . .

Moreover, other courts have held that while a court in the "sending state" may not dismiss the indictment of the "receiving state," the courts of the "sending state" have the authority to dismiss detainer warrants lodged with prison authorities by sister states where it appears that the underlying accusatory instrument itself is subject to dismissal in the courts of the "receiving state" for failure to comply with the speedy trial provisions of the IADC. [Emphasis added.] Baker v. Schubin, 72 Misc.2d at 419, 339 N.Y.S.2d at 369. See also, Buchanan v. Michigan Department of Corrections, 50 Mich.App. 1, 212 N.W.2d 745 (1973); Rainey v. Michigan Department of Corrections, 41 Mich.App. 313, 199 N.W.2d 829 (1972). We hold that in addition to the traditional limited review of extradition cases preserved by the Supreme Court in Cuyler under the IADC, the court of the "sending state" may also dismiss a detainer lodged against a prisoner incarcerated within its borders where it appears that the underlying indictment is subject to dismissal in the courts of the "receiving state" for failure to comply with the provisions of the IADC. We are careful to note that this holding does not prevent a "receiving state" whose detainer has been dismissed from using the extradition process. [Emphasis added.] See, Baker v. Schubin, 72 Misc.2d at 422, 339 N.Y.S.2d at 369. We, therefore, review plaintiff's claims that the detainer should be quashed because of Florida's failure to comply with the speedy trial provisions of Article III(a) of the IADC.

7

*Hickey*, supra, 349 N.W.2d at 776-777.

We note additionally that the *Hickey* court also cited a case where the Wisconsin Court of Appeals discharged an Illinois detainer lodged against a Wisconsin prisoner. State v. Sykes (Wis.Ct.App. 1979), 283 N.W.2d 446. *Hickey's* importance in this case is that the Montana District Court made its determination believing that the underlying accusatory instrument itself was subject to dismissal in the receiving state, Colorado. In light of the denial by the Colorado District Court of Anderson's motion to dismiss we find this is not the case.

Under the facts of this case, we do not base our entire holding on the argument that the Montana District Court is without jurisdiction to make any determination beyond those expressed in the general rule. *Doran*, supra; *Blackburn*, supra. However, reviewing this issue in light of the second issue presented we find that the Montana District Court erred.

The second issue presented by petitioner is determined by the Ninth Circuit Court of Appeals decision of United States v. Bottoms (1985), 755 F.2d 1349. In *Bottoms*, the court determined that an arrest warrant for escape of the defendant in the receiving state was not sufficient to fall under the definition of an "indictment," "information," or "complaint" thereby triggering the IAD in the custody state. This ruling was based upon the language of 18 U.S.C. App. §2, art. I of the Interstate Agreement on Detainers Act which is the precise language of the Montana Interstate Agreement on Detainers. Section 46-31-101, et seq., MCA.

We note also that a number of courts have determined that an outstanding charge based on probation or parole violation is not sufficient to be determined an "untried indictment, information or complaint." Carchman v. Nash (1985), 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516; United

8

States v. Roach (9th Cir. 1984), 745 F.2d 1252, cert den. 474 U.S. 835, 106 S.Ct. 107, 88 L.Ed.2d 87; Hopper v. United States Parole Commission (9th Cir. 1983), 702 F.2d 842. Similarly, in this instance, an arrest warrant, unless it is based upon an untried indictment, information or complaint, should not be considered sufficient to trigger the Interstate Agreement on Detainers.

We remand to the District Court and order that its order of January 26, 1987 be vacated.

DATED this 27th day of May, 1988.

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9