# Norfolk

## RICKY BRON LOCKLEAR

v.

## COMMONWEALTH OF VIRGINIA

No. 0493-87-1

Decided February 7, 1989

COUNSEL

P. P. Daniel Crumpler, III (Parker and Clark, on brief), for appellant.

Robert H. Anderson, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—On October 7, 1985, a felony warrant of arrest was issued by a Franklin,[1] Virginia, city magistrate charging that on or about October 4, 1985, Ricky Bron Locklear (appellant) maliciously wounded Phillip Dale Nixon, Jr. Before he could be arrested appellant left Virginia. Prior to indicting appellant, Virginia authorities learned that he was in the custody of the North Carolina Department of Corrections (North Carolina). Based solely on the Virginia arrest warrant, a request for a detainer was forwarded to North Carolina by the Franklin police. In response to that request North Carolina authorities notified appellant of the detainer and supplied him with a completed "Agreement of Detainers: Form 1."[2] The form advised appellant that the charge against him was: "Maliciously Cut, with Intent to Maim, Disfigure, Disable or Kill." The form further informed appellant that if he requested the appropriate prosecuting officer to proceed to final disposition, he would be brought to trial within 180 days on "all untried indictments, informations or complaints on the basis of which detainers have been lodged against you from the state to whose prosecuting official your request for final disposition is specifically directed." Appellant signed Form 1, affirmatively requesting "that a final disposition be made" of the indicated charge.

By letter dated June 25, 1986, North Carolina authorities advised the Commonwealth Attorney for Southampton County (Commonwealth Attorney) that appellant "is requesting trial in your court under the terms of the Interstate Agreement on De-

---

[1] Franklin is located in Southampton County.
[2] The form was provided to comply with the Interstate Agreement on Detainers, to which both Virginia and North Carolina are signatories. *See* Code § 53.1-210 *et seq.*

tainers."[3] The issue we must decide is whether the time proscribed by the Interstate Agreement is applicable to the time within which appellant was required to be tried in this case. The record reveals that the Commonwealth Attorney received the June 25 North Carolina letter on or about July 7, 1986. Pursuant to a request made in North Carolina's June 25 letter the Commonwealth Attorney forwarded to North Carolina Form 7 in which he agreed to accept temporary custody of appellant and proposed "to bring this person [appellant] to trial on the indictment, information or complaint . . . within the time specified in Article III (a) of Agreement on Detainers." Form 7 was executed on behalf of the Commonwealth by the Commonwealth Attorney, and endorsed by Westbrook J. Parker, Judge of the Circuit Court of Southampton County (trial court), approving appellant's return to Virginia by Commonwealth authorities.[4]

The Commonwealth Attorney then awaited further communication from North Carolina. When nothing further was heard, on or about October 27, 1986, the Commonwealth Attorney telephoned North Carolina authorities in an effort to discover why no notice had been received authorizing the Commonwealth to "pick-up Locklear." The Commonwealth Attorney was advised that the absence of notice was caused by his failure to forward an executed copy of Interstate Agreement Form 6, which customarily is forwarded only after the defendant is in custody in the receiving state, an attorney appointed and a trial date established. Because appellant had not been returned to the Commonwealth and had not been indicted, counsel had not been appointed and no trial date had been set. Promptly upon learning the reason why notice to "pick-up" appellant had not been received, the Commonwealth Attorney forwarded Form 6 to North Carolina authorities.

On or about November 7, 1986, appellant was returned to Virginia and on November 13, 1986 counsel was appointed to represent him on the pending charge. A preliminary hearing was

---

[3] The letter also enclosed three Interstate Agreement forms. Form 2 waived extradition and requested court-appointed counsel; Form 3 gave information as to where appellant was being held, the time served and remaining time to be served; and Form 4 which indicated a different charge (Failure to appear in Norfolk on assault warrant #3563551) and an additional request for counsel.

[4] We construe this Form to bind the parties only to the extent that its terms are applicable to this case.

held on November 24, 1986, after which the charge was certified to the grand jury. The next grand jury met on January 21, 1987 and returned a true bill. Appellant was tried and convicted on the resulting indictment on January 27, 1987.

Prior to his trial, appellant moved the trial court to quash the indictment and dismiss the charge on the ground that he had not been tried within 180 days as required by the Interstate Agreement on Detainers. Appellant asserts that, pursuant to the Agreement on Detainers, he should have been tried within 180 days of July 7, 1986, the day the form requesting early disposition arrived in the Commonwealth Attorney's office. Appellant's motion to quash was denied, whereupon appellant was tried and found guilty as charged. He appeals from that conviction.

■ Virginia and the State of North Carolina have adopted the Agreement of Detainers Act. *See* Code § 53.1-210. Appellant construes Article III of Code § 53.1-210 (Act) to require his case to be disposed of within 180 days following July 7, 1986 because, he says, the word "complaint" includes warrants of arrest such as the document upon which the detainer request was lodged. We disagree. There are jurisdictions in which documents entitled complaints are instruments upon which detainees could be immediately tried upon their return to the receiving state; however, in Virginia a complaint, as that word is defined in Rule 3A:3 of the Virginia Rules of Criminal Practice and Procedure, is not a document upon which a defendant may be tried:

The complaint shall consist of sworn statements of a person or persons of fact relating to the commission of an alleged offense. The statements shall be made upon oath before a magistrate empowered to issue arrest warrants. The magistrate may require the sworn statements to be reduced to writing and signed.

The document which was the basis for the detainer and set in motion appellant's return to Virginia was a warrant of arrest. The detainer was not supported by an untried indictment or information, nor was it supported by a "complaint" as that word is defined by Rule 3A:3.

■ We hold that the use of the word "complaints" in the Act was intended to apply only to instruments such as indictments, informations or complaints upon which the detainee could be tried immediately upon his return. This definition does not include a felony warrant of arrest[5] as was used to detain appellant in this cause.

In *United States v. Bottoms*, 755 F.2d 1349 (9th Cir. 1985) the issue was factually similar to the case before this Court. The *Bottoms* court held that the word "complaints" as used in the Act was a legal word of art not to be interpreted as it would be in common lay usage. What was said there is applicable here:

Appellant contends that the word "complaints," as used in the Act, should be interpreted in its lay, rather than its legal, technical sense. But its use as the final of a series of three technical terms, all related in the meaning, precludes accepting his argument. The principles of *ejusdem generis* and common sense dictate that "complaints" be read as a legal word of art, according to the Fed.R.Crim. p. 3 definition. The use of "untried" as the qualifier for all three words supports this conclusion. .

*Id.* at 1350. *Compare* Virginia Rule 3A:3 *with* Fed. R. Crim. 3.

As in *Bottoms*, the detainer lodged with North Carolina was not because of an untried indictment, information or complaint. Appellant was being detained in North Carolina pursuant to his prison sentence and by the detainer request by the Commonwealth based on an outstanding arrest warrant. We would be rewriting the Act if we added by interpretation the words "arrest warrant" to untried indictment, information and complaint. If the language of the Act was intended to apply the 180 day limitation to include detainees situate as appellant here then such legislative intent should be clearly expressed. We construe the Act to provide a means for an accused detained in a sister state to demand a prompt trial in exchange for his voluntary return to the accusatory state; however, he may not exercise his right to demand that the trial be held within the limitation contained in the Act unless his cause has progressed through the pretrial steps to a point where it

---

[5] Except in circumstances not applicable here (*i.e.*, waiver of indictment) a defendant's guilt or innocence may not be determined by trial on a felony arrest warrant.

is ready for disposition immediately upon his return.

Accordingly, appellant's prosecution was not barred by the limitation contained in Article III of Code § 53.1-210 and the judgment of the trial court is

*Affirmed.*

Koontz, C.J., and Coleman, J., concurred.