The STATE of Ohio, Appellee,

v.

WELLS, Appellant.

[Cite as *State v. Wells* (1994), 94 Ohio App.3d 48.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–1039.

Decided March 24, 1994.

*Michael Miller,* Franklin County, Prosecuting Attorney, *Katherine Press, Joyce Anderson* and *James Canepa,* Assistant Prosecuting Attorneys, for appellee.

*David J. Graeff,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Dean J. Wells, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of three counts of aggravated robbery in violation of R.C. 2911.01, and one count of theft in violation of R.C. 2913.02.

On November 6, 1990, the Hilliard Police Department ("HPD") caused the Franklin County Municipal Court to issue complaint Nos. 27185–1 and 27185–2 charging defendant with aggravated robbery and theft, respectively, in connection with an incident at the Hilliard Knights Inn on September 28, 1990. Two warrants for defendant's arrest were also sworn out under these same numbers. On February 1, 1991, defendant was indicted under case No. 91CR–02–513 ("Case 513") on three counts of aggravated robbery, three counts of robbery and one count of theft. At the time the indictment was returned, defendant was in the custody of the California Department of Corrections on an unrelated conviction. On September 10, 1992, defendant was returned to Franklin County, Ohio. Shortly thereafter, defendant was arraigned in Case 513 and the case was set for trial on November 12, 1992.

After defendant's return to Franklin County, the grand jury returned a second indictment against defendant containing four counts under case No. 92CR–09–4734 ("Case 4734"). Thereafter, trial in Case 513 was continued until March 8, 1993.

On March 8, 1993, a joint hearing on Case 513 and Case 4734 was held before the trial court on four defense motions: motions to dismiss in both cases, alleging that defendant had not been brought to trial within the one-hundred-eighty-day time period of Article III(a) of the Interstate Agreement on Detainers (the "IAD"), and motions to suppress in both cases, alleging that a photo array used in a photographic lineup to identify defendant was "unduly suggestive." On March 10, 1993, the trial court rendered an oral decision from the bench granting defendant's motion to dismiss Case 513 for violation of the speedy trial provision of Article III(a) of the IAD, and overruling defendant's motion to dismiss Case 4734 on these same grounds. On March 29, 1993, the state filed a "Motion for Reconsideration," asking the court to reconsider its decision to dismiss Case 513. Defendant's motions to suppress based on the photo array were overruled.

On May 24, 1993, defendant's trial in Case 4734 commenced. On the second day of trial, the state offered to dismiss three of the four counts of the indictment in exchange for defendant's guilty plea on the remaining theft count. Defendant accepted the offer, entered a guilty plea, and was sentenced on May 25, 1993. Following defendant's sentencing in Case 4734, the court announced that it had changed its decision regarding the motion to dismiss filed by defendant in Case 513, finding that no detainer had ever issued and thus the IAD did not apply; the court set the case for trial, and journalized its decision on June 7, 1993. Defendant responded by filing a motion requesting disqualification of the trial judge from further proceedings in Case 513, a motion to dismiss Case 513 based upon an alleged violation of the speedy trial provisions of Article IV of the IAD, and a motion to withdraw his guilty plea in Case 4734.

On June 29, 1993, Case 513 came on for trial. At the outset, defendant notified the court that he was withdrawing his motion to withdraw his guilty plea in Case 4734. Following a brief hearing, the court overruled defendant's motions requesting disqualification of the trial judge and the dismissal of Case 513 on the basis of Article IV of the IAD. Following a jury trial, defendant was convicted on all seven counts contained in the indictment.

Defendant appeals therefrom, assigning the following errors:

"I. A trial court commits prejudicial error in denying a motion to dismiss, pursuant to R.C. 2963.30, the Interstate Agreement on Detainers, when the record reveals that the accused followed all the requirements.

"II. The trial court commits prejudicial error in denying a motion to dismiss based upon Article IV of the Interstate Agreement on Detainers.

"III. A trial court commits prejudicial error in overruling a motion for disqualification where the record demonstrates the need for the judge's testimony, after the court initially orders dismissal of charges and then two months later alters its decision.

"IV. The trial court commits prejudicial error in overruling a motion to suppress the identification.

"V. An abuse of discretion occurs when the trial court orders the dismissal of a case and then alters its decision, after the accused, in reliance upon the initial order of dismissal, pleads guilty in a related case."

In his first assignment of error, defendant argues that he was not brought to trial within one hundred eighty days as required by Article III(a) of the IAD.

 The IAD is an interstate compact to which both Ohio and California are parties. R.C. 2963.30; Cal.Penal Code 1389. Although codified at R.C. 2963.30, the IAD is "a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash* (1985), 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520; *Cuyler v. Adams* (1981), 449 U.S. 433, 436–442, 101 S.Ct. 703, 706–708, 66 L.Ed.2d 641, 646–647.

One of the central provisions of the IAD is Article III, a lengthy provision which has been summarized as follows:

" * * * Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer. The warden of the institution in which the prisoner is incarcerated is required to inform him promptly of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Art. III(c). If the prisoner does make such a request, the jurisdiction that filed the detainer must bring him to trial within 180 days. Art. III(a). * * *" (Footnote omitted.) *United States v. Mauro* (1978), 436 U.S. 340, 349–353, 98 S.Ct. 1834, 1842–1843, 56 L.Ed.2d 329, 340–343.

The IAD was enacted on the basis of "a legislative finding that 'charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.' " *Carchman, supra,* 473 U.S. at 719–720, 105 S.Ct. at 3403, 87 L.Ed.2d at 520–521 (quoting Article I). Accordingly, the purpose of the IAD is " * * * 'to encourage the expeditious and orderly

disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.' Art. I.

"To achieve this purpose, Art. III of the Agreement establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of 'any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner' by another party State (the receiving State)." (Footnote omitted.) *Id.*, 473 U.S. at 720, 105 S.Ct. at 3403–3404, 87 L.Ed.2d at 520–521.

▮ Although the term "detainer" is not defined in the IAD, the agreement, by its terms, makes the existence of a detainer a prerequisite to its applicability. See *Mauro, supra,* 436 U.S. at 347–51, 98 S.Ct. at 1841–1842, 56 L.Ed.2d at 339–341. Given the means employed in Article III to achieve the IAD's purpose, the detainer requirement of the IAD is simply to ensure that prison officials in a "sending state" have in fact received official notice of criminal charges pending in another state against an inmate; it is not intended to impose technical requirements regarding the form of that notice, as such technical requirements would frustrate the very purpose of the agreement by rendering it inapplicable in many cases where prison officials have in fact been notified that charges are pending in another state against one of their inmates.

Further, the history of the IAD reveals that both the drafters of the agreement and the United States Congress had broad and general understandings of what constituted a "detainer" for purposes of the IAD. The council on state governments, which drafted the IAD, defined a "detainer" as a "warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer." Suggested State Legislation, Program for 1957, at 74. Similarly, the United States House and Senate Reports on the IAD define a "detainer" as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." U.S.Code Cong. & Admin.News 1970, at 4864, 4865.

The record in this case reveals that on or before April 29, 1991,[1] HPD sent a fax to prison officials in California notifying them that defendant faced charges of aggravated robbery and theft in Franklin County, Ohio. The fax contained copies of the two Hilliard complaints and accompanying arrest warrants and the following notation: "We will extradite after the State of California is finished with

---

1. The fax sent by HPD is not dated. However, the record reveals that California prison officials notified defendant of the two Hilliard complaints and warrants on April 29, 1991. As a result, the fax was received in California no later than this date.

him. Thanks. * * *" Although not expressly referred to as a "detainer" by HPD, this fax falls squarely within both of the above definitions of the term. The inclusion of the two Franklin County Municipal Court complaints and warrants in this fax provided California prison officials not only with notice that defendant was facing pending criminal charges in Ohio, but with explicit notice as to the nature of those charges. In addition, given standard operating procedure under the IAD, the notation that "[w]e will extradite after the State of California is finished with him * * *" served to instruct California prison officials that HPD wished to be notified when defendant's release was imminent so that HPD could commence extradition proceedings against him. Further, by providing California prison officials with notice that charges of aggravated robbery and theft were pending against defendant in Ohio, HPD's fax created exactly the situation that the IAD was intended to address.

As a result, construing this fax as anything but a "detainer" would be inconsistent with the IAD, and, in particular, the command of Article IX that the agreement be liberally construed to effectuate its purpose. R.C. 2963.30.

Finally, the record reveals that California prison officials treated HPD's fax as a detainer for purposes of the IAD. Pursuant to Article III(c) of the IAD, California prison officials notified defendant on April 29, 1991, that HPD had lodged a detainer against him on charges of aggravated robbery and theft. California prison officials further advised defendant of his right to request a speedy and final disposition of these charges pursuant to Article III of the IAD and provided defendant with the information and forms necessary to make such a request.

Given all of the foregoing, the fax sent to California prison officials was a detainer for purposes of the IAD.

The remaining issue under Article III(a) of the IAD is whether defendant took the necessary steps to start the one-hundred-eighty-day speedy trial period running. In order to invoke the speedy trial provision of Article III(a), a prisoner who has had a detainer lodged against him must cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition * * * accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." R.C. 2963.30 (Art. III[c] ).

The one-hundred-eighty-day time period in Article III(a) of the IAD "does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer * * *." *Fex v. Michigan* (1993), 507 U.S. ——, ——, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406, 415–416; but, cf., *State v. Mowrey* (1992), 64 Ohio St.3d 482, 597 N.E.2d 101.

The record reveals that on July 19, 1991, defendant caused written notice of the place of his imprisonment, his request for a final disposition of the charges pending against him in Franklin County, Ohio, and the required "certificate of the appropriate [prison] official" to be sent by certified mail to the "FRANKLIN CO. MUNI. CRT." and the "FRANKLIN CO. DA"[2] at their proper addresses. The certified mail return receipts for these notices indicate that they were delivered and signed for on July 25, 1991 and July 24, 1991, respectively.

The prosecution has challenged both of these notices, attacking each on different grounds. With respect to the notice addressed to the Franklin County Municipal Court, the prosecution argues that the notice does not satisfy Article III(a) of the IAD because the court of common pleas rather than the municipal court was the "appropriate court" for purposes of this provision.

While the IAD does not define "appropriate court," in this instance defendant must be found to have complied with that requirement. Specifically, the complaints and warrants against defendant were issued by the Franklin County Municipal Court; copies of those documents were forwarded to the California authorities. Thus, to defendant's knowledge, the only court involved in his charges was the municipal court. The state, however, contends that even if the municipal court was the "appropriate court" initially, the subsequent indictment of defendant divested the municipal court of jurisdiction and rendered the common pleas court the only "appropriate court." See R.C. 1901.20(B).[3]

Initially, given the prosecutor's jurisdiction in all of Franklin County, the prosecutor's regular proceedings before the municipal court, and the warrants and complaints issued by the municipal court, we cannot say that the municipal court is not a court within the prosecutor's jurisdiction. Further, nothing in this record suggests defendant was advised of the indictment. Thus, the state's

---

2. The fact that defendant incorrectly addressed his notice to the Franklin County Prosecuting Attorney, to the "Franklin County DA," is of no consequence. "DA" is an accepted abbreviation for "District Attorney," which in many jurisdictions is synonymous with prosecutor.

3. This provision reads as follows:

"(B) The municipal court has jurisdiction to hear felony cases committed within its territory. In all felony cases, the court may conduct preliminary hearings and other necessary hearings prior to the indictment of the defendant or prior to the court's finding that there is probable and reasonable cause to hold or recognize the defendant to appear before a court of common pleas and may discharge, recognize, or commit the defendant."

arguments would allow the state, in effect, to nullify the IAD by subsequently indicting a defendant, divesting the municipal court of jurisdiction, and rendering a defendant's notice ineffective for failure to notify the "appropriate court." We decline to interpret the IAD in that manner, especially in view of the separate notice required under the IAD which advises the prosecutor of a defendant's request for speedy resolution of pending charges.

With respect to defendant's notice addressed to the "Franklin Cty. DA," the prosecution argues that this notice was never received by the Franklin County Prosecutor's Office; that that office has no knowledge of the identity of "Andrea Little," the individual whose signature appears on the return receipt for this notice; and that under *Fex*, the one-hundred-eighty-day time period of Article III(a) never commenced running.

When an item is sent by certified mail, return receipt requested, and thereafter a signed receipt is returned to the sender, a prima facie case of delivery to the addressee is established. *Tripodi v. Ohio Liquor Control Comm.* (1970), 21 Ohio App.2d 110, 112, 50 O.O.2d 212, 213–214, 255 N.E.2d 294, 296. However, because the prosecution is essentially claiming that the individual whose signature appears on the return receipt has never been employed by the Franklin County Prosecutor's Office, a hearing should be held to give the prosecution an opportunity to substantiate its claim. Among the issues to be determined is whether Andrea Little was employed by the prosecutor's office on July 24, 1991. If not, the court should consider whether she was someone authorized, expressly or impliedly, to sign for the office's mail, such as an employee of the county in the mail room, and whether the notice was in fact actually delivered to someone in the Franklin County Prosecutor's Office despite having first been misdelivered and signed for by an improper party.

Should the trial court conclude on remand that defendant's letter to the "Franklin County DA" was effective for purposes of invoking Article III of the IAD, it is undisputed that the state violated Article III by failing to bring defendant to trial within one hundred eighty days as required by Article III(a). Defendant argues that in the event that such a violation is found, the IAD mandates that all seven counts of the indictment in this case must be dismissed. We disagree.

Article V(c) reads, in pertinent part, as follows:

"[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III * * * the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice * * *." R.C. 2963.30 (Art. V[c]).

Article V(c) relates only to charges contained in the indictment, information or *complaint* which served as the basis for the detainer. *People v. Newton* (Colo.1988), 764 P.2d 1182, 1189. Here, the detainer in question was lodged on the basis of the two Hilliard complaints and warrants, which form the basis for only two of the seven counts of the indictment in this case. Specifically, Counts 5 and 6 of the indictment charging defendant with aggravated robbery and the lesser included offense of robbery are based upon the charges contained in the Hilliard complaints and warrants; the remaining five counts of the indictment arose out of separate and unrelated incidents. Thus, the speedy trial provision of Article III(a) is inapplicable to the remaining five charges. If on remand Article III is found to apply, only Counts 5 and 6 of the indictment are subject to dismissal pursuant to Article V(c). *Newton, supra,* 764 P.2d at 1190.

Nonetheless, because the remaining counts of the indictment arose from transactions separate from those referred to in the Hilliard complaints on which the detainer was based, trying defendant on those counts implicates Article V(d) of the IAD, which states:

"(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction * * *."

While the IAD expressly provides that the proper sanction for violations of Article III's "speedy trial" provision or Article IV's "speedy trial" or "anti-shuttling" provisions is dismissal of the charges "on the basis of which the detainer has been lodged," the IAD does not similarly provide with respect to violations of Article V(d). Thus, if the IAD is found to apply in this case, any violation of Article V(d) does not require that the five counts of the indictment which are unconnected with the detainer filed by HPD be dismissed. *Cooney v. Fulcomer* (C.A.3, 1989), 886 F.2d 41; *Ramirez v. State* (Ind.App.1983), 455 N.E.2d 609, 614. While we do not condone the prosecution's violation of Article V(d), neither the IAD itself nor any unfair prejudice to defendant demands the dismissal of any charges other than those contained in Counts 5 and 6 of the indictment.

Defendant's first assignment of error is sustained to the extent stated in the foregoing discussion.

We address defendant's fifth assignment of error next as, its resolution bears directly upon the resolution of defendant's second assignment of error.

In his fifth assignment of error, defendant challenges the trial court's journal entry of June 7, 1993, by which the court overruled defendant's motion to dismiss

for violation of Article III(a) of the IAD. Defendant argues that the entry is a nullity because the trial court's oral "ruling" granting his motion on March 10, 1993 constituted the final judgment on this matter.

█ In Ohio, "[a] court of records speaks only through its journal and not by oral pronouncement." *State ex rel. Cooper v. Ater* (1974), 38 Ohio St.2d 229, 231, 67 O.O.2d 294, 295–296, 313 N.E.2d 7, 9; *State v. Stephens* (1977), 52 Ohio App.2d 361, 367, 6 O.O.3d 404, 407, 370 N.E.2d 759, 764. The only journal entry pertaining to defendant's motion to dismiss is that of June 7, 1993, overruling the motion. The trial court's previous contrary oral pronouncement on March 10, 1993 was, standing alone, without any legal force or effect.

█ In addition, defendant argues that even if the judgment entry overruling his motion to dismiss controls, he was unfairly prejudiced by the court's reversal because his previous guilty plea in companion Case 4734 was made in reliance upon the court's earlier oral ruling that Case 513 would be dismissed. In essence, defendant alleges that his guilty plea in Case 4734 was not made "knowingly and voluntarily" because, at the time he entered this plea, the trial court had incorrectly led him to believe that the single count to which he was pleading guilty in Case 4734 was the only charge pending against him.

Apart from the fact that defendant challenges the validity of a guilty plea not entered in this case, a matter properly raised on appeal in that case, the transcript[4] reveals that defendant's claim is without merit. After the trial court stated on the record that it was changing its decision regarding defendant's motion to dismiss, defendant filed a motion to withdraw his guilty plea in Case 4734; on June 29, 1993, however, following consultation with counsel, defendant chose to withdraw his motion. Whether or not defendant's initial guilty plea in Case 4734 was entered knowingly and voluntarily, defendant's subsequent withdrawal of his motion to withdraw his guilty plea in Case 4734 was made with full knowledge of the trial court's decision regarding this case. Defendant's fifth assignment of error is overruled.

█ Defendant's second assignment of error alleges that defendant's speedy trial rights under Article IV of the IAD were violated.

Article IV of the IAD provides a mechanism by which a criminal justice agency which has charges pending against a prisoner in another state may obtain temporary custody over that prisoner for the purpose of obtaining a final disposition of those charges.

---

4. Although Case 4734 is not before us, the transcript of that case is contained within the same three volumes as the transcript of this case.

The record in this case does not reveal whether the prosecution obtained custody over defendant pursuant to Article III or IV of the IAD. Although the fact that defendant requested the final disposition of the charges pending against him in Franklin County pursuant to Article III suggests that custody over defendant was obtained pursuant to that provision, we assume for the purpose of addressing defendant's second assignment of error that Article IV was used to obtain custody over defendant.

Defendant argues that he was not brought to trial within one hundred twenty days of his arrival in Ohio as required by Article IV(c). The record reveals that defendant arrived in Ohio on September 10, 1992, and that the present case was set for trial on November 12, 1992, sixty-three days after defendant's arrival. Due to various delays, defendant was not actually brought to trial until June 29, 1993, more than two hundred eighty days after his arrival in Ohio.

Defendant concedes that the running of the one-hundred-twenty-day period of Article IV(c) was tolled from June 1, 1993 until June 29 of that year as a result of various defense motions. Defendant further concedes that his filing a motion to dismiss on November 12, 1992, tolled the running of the one-hundred-twenty-day period. However, defendant contends that his motion to dismiss only tolled the one-hundred-twenty-day period until the trial court issued its oral "ruling" sustaining the motion on March 10, 1993; that from March 10, 1993 until June 1, 1993, a period of seventy-three days, Article IV's one-hundred-twenty-day period was running; that seventy-three days, combined with the sixty-three days which elapsed immediately after defendant's arrival in Ohio, total one hundred thirty-six days.

Defendant's argument fails because it relies upon the mistaken assumption that the trial court's oral pronouncement of March 10, 1993, constituted a final judgment on the motion to dismiss. As previously noted, the court's oral pronouncement of March 10, 1993, was of no legal force or effect; a final judgment on defendant's motion to dismiss was not made until the court filed its judgment entry on June 7, 1993, overruling the motion. Therefore, the one-hundred-twenty-day period was tolled from November 12, 1992, when defendant filed the motion, until June 7, 1993, by which time other defense motions were pending. As a result, only sixty-three days had elapsed when defendant was brought to trial on June 29, 1993.

Defendant nonetheless argues that because the state resurrected his motion to dismiss after the trial court had tentatively ruled on it, by filing an impermissible "motion for reconsideration" on March 29, 1993, the time from March 10, 1993 until June 7, 1993 should not toll the one-hundred-twenty-day period. Defendant correctly asserts that "[t]he Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment." *Pitts v. Dept. of Transportation* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, paragraph one of

the syllabus. However, no final judgment was entered on defendant's motion to dismiss when the prosecution filed its "motion for reconsideration." Thus, defendant's motion to dismiss was still before the trial court; the prosecution's motion merely served to provide the court with additional legal authority. Defendant's second assignment of error is overruled.

■ Defendant's third assignment of error asserts that the trial court abused its discretion in overruling defendant's motion to disqualify the trial judge; defendant contends that the court's reversal on defendant's motion to dismiss created, at least, the appearance of bias or prejudice on the part of the trial judge.

The Ohio Supreme Court has stated that bias or prejudice:

"[W]hen used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contra-distinguished from an open state of mind which will be governed by the law and the facts.

" * * * *

"[J]udicial discretion in a situation of this kind is abused, where it is exercised to an end or purpose wholly unjustified by and clearly against reason and evidence * * *." *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 471, 58 O.O. 315, 319, 132 N.E.2d 191, 195, 196.

The trial court's changed position was based on the United States Supreme Court's recent decision in *Fex v. Michigan, supra.* Despite defendant's assertion to the contrary, the *Fex* decision is potentially outcome-determinative in this case. Prior to *Fex*, the one-hundred-eighty-day time period of Article III(a) of the IAD began running when a prisoner substantially complied with the requirements of Article III(a) and (b). *Mourey, supra.* However, *Fex* altered that rule, determining that the one-hundred-eighty-day time period of Article III(a) does not begin running until "the prisoner's request for final disposition of the charges against him has *actually been delivered* to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." (Emphasis added.) *Fex, supra,* 507 U.S. at ——, 113 S.Ct. at 1091, 122 L.Ed.2d at 415–416. The trial court apparently accepted the prosecution's claim that defendant's notice was never delivered to the Franklin County Prosecutor's Office and thus ruled that defendant had not satisfied the requirements of Article III.

Not addressing whether defendant's motion was properly addressed to the trial court, we find the trial court's decision regarding the delivery of defendant's notice, although premature in light of the evidence before it, to be based upon legitimate legal theory. As such, it was not indicative of any bias or prejudice against defendant. Defendant's third assignment of error is overruled.

Defendant's fourth assignment of error alleges that the trial court erred in permitting the three robbery victims, Nancy Custshall, Paul Massenelli and Amy Sellers, to testify as to their prior out-of-court identifications of defendant from a photographic array; defendant asserts that the array was so impermissibly suggestive as to violate the Due Process Clause of the Fourteenth Amendment.

At defendant's trial, Custshall, Massenelli and Sellers testified that they had identified defendant as their assailant prior to trial from a photographic array shown to them by the police. The array consisted of six black-and-white photocopies of photographic originals. The six photocopies were equal in size and each was of a Caucasian male in his late teens or early twenties. The photo of defendant was an enlarged copy of defendant's driver's license photograph, while the other five photos in the array were copies of "mugshot" photographs. As a result, defendant's image was considerably larger and darker and stood out noticeably from the other five photos in the array.

"The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." (Footnote omitted.) *Manson v. Brathwaite* (1977), 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140, 149; *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. The critical inquiry is "whether under the 'totality of the circumstances' the identification was reliable even though the * * * procedure was suggestive." *Biggers, supra,* 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. The factors to be considered include:

"[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson, supra,* 432 U.S. at 114–116, 97 S.Ct. at 2253, 53 L.Ed.2d at 154; *Biggers, supra,* 409 U.S. at 198–200, 93 S.Ct. at 382, 34 L.Ed.2d at 410.

Even if the photographic array was unnecessarily suggestive, under these factors each of the pretrial identifications of defendant was reliable. All three of the victims testified that they had been able to get a clear and unobstructed view of defendant's face while they were being robbed. Each of the victims gave the police a description of their assailant which matched defendant's actual appearance with a high degree of accuracy. Further, the detail of these descriptions, particularly with respect to defendant's attire during the robberies, indicates that each of the victims was highly attentive during the robbery.

Among the most significant indicia of the reliability of the three identifications of defendant from the photo array is the degree of certainty expressed by each of the victims as to the identity of defendant. In each case, the photo identification took place within a week of the actual robberies. Custshall, Massenelli and Sellers testified that, upon seeing defendant's photo in the array, they were able to identify him as their assailant immediately and with a high degree of certainty. The reliability of Massenelli's identification is further bolstered by the fact that he had failed to identify his assailant in two previous photo arrays which did not include a photo of defendant. Finally, each of the victims stated unequivocally that they were not pressured or directed in any way by the police to select defendant's photo from the array.

These factors taken as a whole provide evidence of the reliability of the victim identifications sufficient to overcome the nature of the photo array from which the identifications were made. The victims' testimony regarding these prior pretrial identifications was properly admitted at defendant's trial. Defendant's fourth assignment of error is overruled.

Having overruled defendant's second, third, fourth and fifth assignments of error, but having sustained defendant's first assignment of error to the extent indicated, we reverse the judgment of the trial court and remand the matter for further proceedings consistent herewith.

*Judgment reversed*
*and cause remanded.*

BOWMAN and TYACK, JJ., concur.