## A01A2268. CARLTON v. THE STATE.
(563 SE2d 521)

BARNES, Judge.

Thomas Carlton, a federal prisoner, filed a pro se motion under the Interstate Agreement on Detainers ("IAD") to dismiss "all actions, indictments, informations, and complaints" against him after Walker County lodged a detainer against him with the Federal Bureau of Prisons based on a warrant for his arrest.

The record contains an arrest warrant, based upon an affidavit

---

[17] (Citation and punctuation omitted.) *Raines*, supra.
[18] See *Braswell*, supra at 511 (2).

and signed by a magistrate, for violation of the Georgia Controlled Substances Act for possession of methamphetamine. The warrant was forwarded to the original federal correctional facility having custody of Carlton by letter from the Walker County Sheriff's Office and signed by the warrant officer. After reciting information about Carlton, the letter stated:

> Enclosed is a certified copy on an arrest warrant on file at the WALKER COUNTY SHERIFF'S DEPARTMENT, LAFAYETTE, GA. Please accept this letter and copy of the warrant as a detainer on the above named subject. Please advise when this subject is ready to be released from your facility. We will pick up subject.

In response to the detainer letter, Carlton made a request for final disposition of the "indictments, informations, or complaints" now pending against him. A federal correctional official forwarded Carlton's demand by letter to the district attorney, sent certified mail. The copy of the letter in the record shows it was sent to the clerk of the superior court, and the first page of the letter shows it was filed on October 6, 1998.

When Carlton's request for disposition of the charges was not acted upon in the time required, he moved for dismissal of the charges under the IAD. No response to this motion is in the record on appeal. Nevertheless, the trial court denied the motion to dismiss solely because the IAD "does not apply to cases only in the warrant stage, but requires a formal charging instrument, i.e., indictment or its equivalent." According to the record on appeal, no issue concerning service of Carlton's request for disposition was raised below or ruled on by the trial court. After his motion for an out-of-time appeal was granted, Carlton filed this appeal.

Because a detainer based on a warrant for pending criminal charges triggers the protections of the IAD, we reverse. Further, because our opinion in *Newt v. State*, 190 Ga. App. 301 (379 SE2d 11) (1989), conflicts with the Supreme Court's interpretation of the IAD Act in *Suggs v. Hopper*, 234 Ga. 242, 243 (215 SE2d 246) (1975), that the IAD does not apply to post-conviction arrest warrants for probation violations, we must overrule *Newt*.

1. Procedurally, no issue regarding the service of Carlton's IAD request is properly before us. No issue was raised or ruled on in the trial court about the method Carlton used to forward his request for disposition of the charges against him, and the State's brief on appeal does not even mention the possibility of this issue. Instead, the trial court denied Carlton's motion to dismiss only because it found that the IAD did not apply to cases at the warrant stage. When this case

is returned upon remittitur, the State may raise any appropriate procedural defenses at that time. We should not rule on this issue now because it has not been addressed by the parties or ruled on by the trial court.

2. The IAD "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U. S. 146, 148 (121 SC 2079, 150 LE2d 188) (2001).

Because outstanding charges against a prisoner "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation," the purpose of the IAD is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. . . ." OCGA § 42-6-20 (Art. I).[1] Further, it "shall be liberally construed so as to effectuate its purposes." OCGA § 42-6-20 (Art. IX).

If the prisoner fulfills the notice requirements of the IAD, and the receiving state fails to bring the prisoner to trial within 180 days, the court in the receiving state must dismiss the "indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner." OCGA § 42-6-20 (Art. III (a), (d)).

In this case, the issue is whether a detainer based on an arrest warrant for a violation of the Georgia Controlled Substances Act constitutes a detainer that invokes the provisions of the IAD.

In *United States v. Ford*, 550 F2d 732 (2nd Cir. 1977), federal prosecutors lodged a warrant for bank robbery with state authorities as a detainer against the defendant and then sought to compel his presence with a writ of habeas corpus ad prosequendum. The court noted that warrants were "commonly used as detainers," and that the government conceded that the defendant was subject to a detainer. Id. at 736, n. 5.

In considering the Second Circuit's holding, the U. S. Supreme Court subsequently noted that "[t]he Agreement itself contains no definition of the word 'detainer.' The House and Senate Reports, however, explain that '(a) detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is

---

[1] Carlton's brief supporting his motion stated: "Prisoner has been denied rehabilitation programs and custody level considerations due to Walker Counties [sic] refusal to [bring him to trial on its charges]." He reiterated that reasoning in a letter to the Walker County Sheriff requesting prompt service of the warrant: "This warrant is . . . halting me from programming and continue [sic] to better myself. . . . [A]fter the warrant has been served, it will allow me to enter a different security level and new programs." The State did not contest these statements.

wanted to face pending criminal charges in another jurisdiction.' [Cits.]" *United States v. Mauro*, 436 U. S. 340, 359 (IV) (B) (98 SC 1834, 56 LE2d 329) (1978).[2] "Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions." Id. at 361-362 (V).

Further, the drafters of the IAD intended "detainers" to include warrants. The Ohio Court of Appeals, in holding that a faxed letter accompanied by complaints and arrest warrants constituted a detainer, noted that, "The council on state governments, which drafted the IAD, defined a 'detainer' as a 'warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer.'" *State v. Wells*, 94 Ohio App.3d 48, 53 (640 NE2d 217) (1994).

In this case, Walker County used an arrest warrant to lodge a detainer against Carlton, notifying the Federal Bureau of Prisons that Carlton is wanted to face pending criminal charges in Walker County. A sheriff swore under oath that Carlton committed a criminal offense by violating the Georgia Controlled Substances Act, and a magistrate then issued a warrant commanding the arrest of Carlton. The warrant specified that Carlton was *"charged by the prosecutor"* with the offense against the laws of this State as set out in the sheriff's affidavit. (Emphasis supplied.)

Article I of the IAD explains that it is intended to apply to both "charges outstanding against a prisoner" and "detainers based on untried indictments, informations or complaints." OCGA § 42-6-20 (Art. I). Clearly a charge was pending against Carlton. Further, although "complaint" is not a term commonly used in the criminal justice system in Georgia, "complaint" is defined in Black's Law Dictionary (6th ed.), as

> a charge, preferred before a magistrate having jurisdiction, that a person named (or an unknown person) has committed a specified offense, with an offer to prove the fact, to the end that a prosecution may be instituted. The complaint can be "taken out" by the victim, a police officer, the district attorney, or other interested party. Although the complaint charges an offense, an indictment or information may be the formal charging document. The complaint is a written state-

---

[2] In *United States v. Mauro*, the U. S. Supreme Court considered two cases. In the first case, it held that the prosecutor's filing of a writ of habeas corpus ad prosequendum did not, by itself, trigger the provisions of the IAD. 436 U. S. at 349. In the second case, it held that when the government lodges a detainer based on an arrest warrant in addition to the writ, the IAD applies. Id. at 361-362.

ment of the essential facts constituting the offense charged. In the federal courts, it is to be made upon oath before a magistrate. Fed. R. Crim. P. 3. If it appears from the complaint that probable cause exists that the person named in the complaint committed the alleged crime, a warrant (*q.v.*) for his arrest will be issued. Fed. R. Crim. P. 4.

In this state, arrest warrants are issued by judges based on their own knowledge or based on information given them under oath (OCGA § 17-4-40), and the contents required in affidavits requesting arrest warrants are stated in OCGA § 17-4-41. Therefore, as a Georgia arrest warrant meets all the criteria of a complaint as defined in Black's, we find that a Georgia arrest warrant is the functional equivalent of a "complaint" for purposes of the IAD.[3]

As the U. S. Supreme Court acknowledged in *United States v. Mauro*, supra, 436 U. S. at 361-362, a detainer lodged against a prisoner based on a warrant invokes the IAD. The decision in *Carchman v. Nash*, 473 U. S. 716 (105 SC 3401, 87 LE2d 516) (1985), does not require a different result. In *Carchman*, the U. S. Supreme Court considered whether a detainer based on probation violation charges triggered the application of the IAD and concluded that the phrase "untried indictment, information or complaint" in the IAD refers to criminal charges pending against a prisoner. Id. at 725 (III) (A). "A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms" of the IAD and "does not result in the probationer's being 'prosecuted' or 'brought to trial' for that offense." Id.

> Instead, the probation-violation charge results in a probation-revocation hearing, a proceeding to determine whether the conditions of probation should be modified or the probationer should be resentenced, at which the probationer is entitled to less than the full panoply of due process rights accorded a defendant at a criminal trial.

Id. at 725-726 (III) (A).

Presaging the U. S. Supreme Court's 1985 decision in *Carchman*, the Supreme Court of Georgia also held in 1975 that arrest warrants for probation violations do not invoke the provisions of the IAD.

---

[3] Further, in another context, we held that a "letter with the Department of Corrections stating there was an outstanding warrant for the defendant, and the State intended to prosecute, substantially complied with the codal definition of a 'detainer.' OCGA § 42-6-1." *Riley v. State*, 180 Ga. App. 409, 412 (3) (349 SE2d 274) (1986) (physical precedent only).

The purpose of the [IAD] is to insure speedy trial on pending charges before staleness and difficulty of proof set in. These are pre-trial, and not sentencing, considerations. Suggs' petition is without merit because the statute by its terms relates only to an "untried indictment, information or complaint," and does not apply to warrants for arrest for probation violation.

*Suggs v. Hopper*, supra, 234 Ga. at 243. Even though the ultimate holding in *Suggs v. Hopper* was that the IAD did not apply to arrest warrants for probation violations, the analysis is not based on the fact that the detainer was for a warrant. The lesson of *Suggs v. Hopper* is that the IAD applies to detainers holding a prisoner for trial for untried charges.

In *Newt v. State*, supra, 190 Ga. App. at 301, quoting *Suggs v. Hopper*, however, we held that the IAD does not apply to detainers based on *any* warrants for arrest. Because *Newt* conflicts with the U. S. Supreme Court's interpretation that detainers include arrest warrants and overextends the analysis in *Suggs*, we must overrule it.

*Judgment reversed. Pope, P. J., Andrews, P. J., Johnson, P. J., Smith, P. J., Miller, Ellington, Phipps and Mikell, JJ., concur. Blackburn, C. J., and Eldridge, J., dissent. Ruffin, J., concurs in Division 2 of the dissent only.*

ELDRIDGE, Judge, dissenting.
I respectfully dissent.
1.

According to the clear wording of Article III (a), the right of a prisoner to be tried within 180 days accrues only after the precise operational procedures set forth in the [Interstate Agreement on Detainers] are completely satisfied. It is incumbent upon the prisoner to initiate these procedures, and the Court of Appeals has previously indicated that the notice provisions of Article III (b) must be strictly complied with.[4]

In that regard, Article III (b) states that: "The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate."

In the instant case, Carlton served the prosecuting official, but

---

[4] (Footnotes omitted.) *Clater v. State*, 266 Ga. 511, 512-513 (3) (467 SE2d 537) (1996).

he failed to mail his IAD request, certified mail with return receipt requested, to the Walker County Superior Court. The majority claims that "the copy of the letter in the record shows it was sent to the clerk of the superior court, and the first page of the letter shows it was filed on October 6, 1998." However, the letter sent was a form letter addressed to Herbert E. Franklin, District Attorney, Walker County, and was signed for by the district attorney's office. On the bottom of the last page of the district attorney's letter is a form "cc: Clerk of Court" without identification of any clerk of court to which the letter was sent or any indication whatsoever that such was actually done. The record shows no return receipt from the clerk of court, although eight return receipts are in the record for other documents sent certified mail, return receipt requested. In fact, nowhere in the record does Carlton even claim he sent the IAD letter to the clerk of court, although he states in the record six different times that he mailed it to the district attorney. It would appear the letter was sent to the district attorney's office, which made a copy of the original and filed it with the court clerk. "[T]he plain language of Article III (b) simply does not support [any other] argument, as it requires that notice '*shall*' be served on the prosecuting officer and court 'by registered or certified mail, return receipt requested.' Nowhere does Article III (b) suggest that alternative forms of service will be deemed acceptable."[5]

The dismissal of a criminal case (or, in this case, not permitting the State to even begin a criminal case) is an extreme sanction which can be invoked only if there has been a strict compliance with the statute. Here, there is no evidence in the record that the IAD request was mailed to the Clerk of Walker County Superior Court, registered mail, return receipt requested, as required under the IAD. "The record in the present case shows that the defendant filed his written request with the district attorney's office, but he did not file his request with the court or otherwise comply with the remaining requirements of the statute."[6] Accordingly, the trial court did not err in denying Carlton's motion to dismiss. A trial court's judgment, right for any reason, will be affirmed.[7]

2. Carlton based his IAD request on a detainer filed pursuant to an arrest warrant for possession of methamphetamine; no indictment has ever been filed with regard thereto. The plain language of the IAD limits its application to "any untried indictment, information or complaint."[8] And the Supreme Court of the United States has held that the plain language of the Agreement controls over the " 'broader

---

[5] (Emphasis in original.) Id. at 513 (3).

[6] *Johnson v. State*, 154 Ga. App. 512, 513 (268 SE2d 782) (1980).

[7] *State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001).

[8] OCGA § 42-6-20, Art. III (a), Ga. L. 1972, p. 938, § 1; Ga. L. 2000, p. 1589, § 3.

purposes of the legislation.' "[9] Further, it is important to recognize, as the majority does not, that "Art. III does not apply to all detainers, but only to those based on 'any untried indictment, information or complaint.' "[10] "[T]he phrase 'untried indictment, information or complaint' in Art. III refers to criminal charges pending against a prisoner."[11]

In this case, an arrest warrant — with the standard sworn affidavit that accompanies sheriff's arrest warrants[12] — is not a "pending criminal charge." At best, it entitles Carlton to a preliminary hearing before a magistrate, which may or may not result in a bindover, which may or may not result in presentment before a grand jury, which may or may not result in the return of a true bill.

The majority's reliance on the 1978 case of *United States v. Mauro*, supra, is misplaced. Even the most cursory reading shows that *Mauro* dealt with federal habeas corpus applications and has nothing whatsoever to do with the legal issue before us. In fact, the *Mauro* Court expressly held that a writ of habeas corpus ad prosequendum was not a "detainer" under Art. III at all, but was a " 'written request for temporary custody' " within the meaning of the IAD.[13] That Court held that a writ of habeas corpus ad prosequendum was not an "untried indictment, information or complaint."[14] To then hold, as does the majority, that *Mauro* "implicitly acknowledged" that a detainer based upon an arrest warrant triggers the IAD under Art. III is error.

Apparently recognizing that the plain language of the IAD actually controls, the majority has decided to hold that an arrest warrant is a "complaint" for purposes of the IAD, so as to fit within the parameters of Article III of the Agreement. However, even under the majority's controlling authority for this novel proposition, Black's Law Dictionary, a "complaint" under Art. III is a federal criminal charging tool that is analogous to an accusation here in Georgia, and a misdemeanor trial may commence upon a complaint as it does upon an accusation. Fed. R. Crim. P. 3, 58 (b) (1). As such, a "complaint" is an instrument demonstrating "pending charges." Upon the filing of a complaint, an arrest warrant may issue, but the warrant is not the complaint, itself. Fed. R. Crim. P. 3, 4. An arrest warrant based on a

---

[9] *Carchman v. Nash*, 473 U. S. 716, 723 (II), 729 (III) (C) (105 SC 3401, 87 LE2d 516) (1985); *United States v. Mauro*, 436 U. S. 340 (98 SC 1834, 56 LE2d 329) (1978).

[10] (Footnote omitted.) *Carchman v. Nash*, supra at 727 (III) (B).

[11] Id. at 725 (III) (A).

[12] OCGA § 17-4-41.

[13] *Mauro*, supra at 361-362 (IV) (B), (V) ("We therefore conclude that a writ of habeas corpus ad prosequendum is not a detainer for purposes of the Agreement.").

[14] Id. at 357.

sheriff's affidavit — absent indictment, information, or complaint — does not demonstrate "pending charges."

Further, Sixth Amendment rights attach upon the filing of a complaint, as they do upon the filing of other charging instruments. Fed. R. Crim. P. 5 (c).[15] Such rights do not, as here, attach upon the mere issuance of an arrest warrant.[16]

In short, there is nothing about an arrest warrant issued on a sheriff's affidavit that remotely resembles a "complaint" under Art. III for purposes of the IAD. I believe it unwise for this Court to import federal charging procedures into Georgia law — with the myriad of constitutional ramifications that come with such procedures — simply to reverse a single case.

As a respected member of this Court, Judge Benham correctly determined in *Newt v. State*[17] that "the statute [IAD] relates only to an 'untried indictment, information or complaint,' and does not apply to warrants for arrest."[18] So it has been since 1989. The majority's reliance on the 1978 *Mauro* case of which this Court was aware at the time *Newt* was decided provides no legitimate reason for overruling established precedent. Accordingly, the trial court did not err in denying Carlton's motion to dismiss.

I am authorized to state that Chief Judge Blackburn joins in this dissent and Judge Ruffin joins in Division 2 of this dissent.

DECIDED MARCH 29, 2002 — 

*Albert L. Watson III*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Christopher Arnt, Assistant District Attorney*, for appellee.

---

[15] *United States v. Marion*, 404 U. S. 307, 321-322 (92 SC 455, 30 LE2d 468) (1971); accord *Haisman v. State*, 242 Ga. 896, 897 (2) (252 SE2d 397) (1979).

[16] Id.

[17] 190 Ga. App. 301 (379 SE2d 11) (1989).

[18] (Punctuation omitted.) Id. Accord *United States v. Bottoms*, 755 F2d 1349 (9th Cir. 1985); *Crawford v. State*, 669 NE2d 141, 148 (Ind. 1996); *Taylor v. State*, 582 S2d 152 (Fla. 1991); *Locklear v. Commonwealth*, 7 Va. App. 659 (376 SE2d 793) (1989); *Blakey v. State*, 232 Mont. 178 (755 P2d 1380) (1988).